# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2575

_____

Bennie Wenzel,                          *
                                        *
          Appellant,                    *
                                        *
     v.                                 *   Appeal from the United States
                                        *   District Court for the Western
                                        *   District of Missouri.
Missouri-American                       *
Water Company,                          *
                                        *
          Appellee.                     *

_____

Submitted:  February 14, 2005
      Filed:  April 20, 2005 (Corrected: 04/22/05)

_____

Before WOLLMAN, MCMILLIAN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Missouri-American Water Company placed Bennie R. Wenzel, Jr., on medical leave. He sued, claiming disability discrimination and retaliation in violation of the Americans with Disabilities Act and the Missouri Human Rights Act. *See* **42 U.S.C. § 12101**, *et seq*; **Mo. Rev. Stat. § 213.010,** *et seq.* The district court[1] granted

_____

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

summary judgment to Missouri-American, concluding Wenzel did not show he was "regarded as" having a disability, or was retaliated against. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

This court reviews de novo a grant of summary judgment, giving the nonmovant the benefit of all reasonable inferences from the record. *Griffith v. City of Des Moines*, 387 F.3d 733, 734 (8th Cir. 2004). The nonmoving party may not rest on "mere allegations or denials," but must show a genuine issue of material fact (or that the movant is not entitled to judgment). *American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111 (8th Cir. 1997); **Fed. R. Civ. P. 56(c)**.

Wenzel suffered two injuries while employed as a Utility Person III (backhoe operator) at Missouri-American. This position regularly required lifting 60 to 70 pounds and operating a backhoe, shovel, and 75-pound jackhammer. Wenzel was first injured in 1999 while prying a 600-pound water valve. After surgery, he was on temporary light duty, resuming full employment within months.

After a second injury in May 2001, Wenzel returned to light duty. Initially, the doctor restricted him to lifting 10 to 15 pounds, with no bending or stooping. As his condition improved, the restriction increased to 20 to 25 pounds, with occasional bending and stooping. The restriction was raised to 35 pounds, where it remained, based on three medical assessments, for three months. Missouri-American mistakenly believed the condition permanent, preventing Wenzel from ever performing the essentials of his job. Because Missouri-American did not have any permanent light-duty jobs, it placed him on medical leave. Wenzel filed a grievance with his union. During the leave, Wenzel worked demolishing buildings, removing snow, hauling refuse, mowing, and doing other manual labor.

In May 2002, Wenzel and Missouri-American began the first of three arbitrations. The arbitrator concluded that Missouri-American improperly ordered

medical leave, but that Wenzel needed a doctor's full release in order to return to work. The arbitrator also allowed Missouri-American to demand a "second opinion" if not satisfied with the release Wenzel provided.

In November 2002, Wenzel submitted a release, which Missouri-American refused because the doctor had not seen Wenzel in more than one year. In December, Wenzel sued for disability discrimination. Independently, the arbitrator ruled the release insufficient, and put the burden on Wenzel to secure a full release.

In January 2003, Wenzel submitted a second release from another doctor he chose. Missouri-American was still not satisfied, stating that he did not tell the doctor his job required heavy lifting. For a third time the parties went to arbitration. In March, the arbitrator found the release sufficient, but also that Missouri-American was still entitled to a second opinion. After Wenzel passed a function capacity evaluation in April 2003, he returned to work without restriction.

I.

Absent direct evidence, this court applies the *McDonnell Douglas* analysis to disability discrimination claims. **Price v. S-B Power Tool**, 75 F.3d 362, 364 (8th Cir. 1996), *citing* **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04 (1973). A plaintiff must first establish a prima facie case: a disability within the meaning of the ADA; qualifications to perform the essential functions of the job, with or without reasonable accommodation; and an adverse employment action due to a disability. *See* **Aucutt v. Six Flags Over Mid-America, Inc.**, 85 F.3d 1311, 1316 (8th Cir. 1996). If the prima facie case is met, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. **Price**, 75 F.3d at 365. Once the employer meets its burden, the plaintiff must show that the articulated reason is an illegal pretext. **Id.**

The threshold issue is whether Wenzel had a disability within the meaning of the ADA. Though all parties agree that Wenzel did not have an actual disability, he argues that Missouri-American "regarded" him as having a disability. **42 U.S.C. § 1210(C)**.

Individuals who are regarded as having a disability, although not actually disabled, are protected by the ADA. ***Sutton v. United Air Lines, Inc.***, 527 U.S. 471, 489 (1999). "Regarded as" disability can occur in two ways: (1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity), or (2) the employer mistakenly believes that an *actual* impairment substantially limits one or more major life activity. ***Brunko v. Mercy Hosp.***, 260 F.3d 939, 942 (8th Cir. 2001). The term "substantially limited" means "unable to perform" or "significantly restricted as to the condition, manner or duration under which" of performing a major life activity. **29 C.F.R. § 1630.2(j)(1)(i)-(ii)**. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. ***Genthe v. Lincoln***, 383 F.3d 713, 716 (8th Cir. 2004).

Wenzel argues that Missouri-American misinterpreted his doctor's restrictions, thus regarding his ability to work as substantially limited. Missouri-American admits it misjudged the doctor's restrictions (as to permanency), but claims that the mistake related only to Wenzel's ability to perform one specific job.

Missouri-American may not, however, regard Wenzel as substantially limited in the life activity of working, that is unable to work a wide range of jobs. *See* ***Knutson v. Ag Processing, Inc.***, 394 F.3d 1047, 1051 (8th Cir. 2005). If Missouri-American regarded Wenzel as unable to perform "one particular job," there is no violation of the ADA. *See* ***Wooten v. Farmland Foods***, 58 F.3d 382, 386 (8th Cir. 1995). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." **29 C.F.R. §**

**1630.2(j)(3)(i)**. To demonstrate that Missouri-American regarded him as unable to perform a class of jobs, Wenzel emphasizes that there was no lifting requirement in the written job description for a Utility III, and that a Missouri-American manager testified that his injury substantially impaired a major life activity.

Despite the absence of a lifting requirement in his job description, Wenzel admitted that his position required heavy-lifting and working with a shovel, pickaxe, and jackhammer. Moreover, the record does not indicate Missouri-American later added these duties to a Utility III to exclude him from employment.

The manager's statement that Wenzel's ability to lift was substantially impaired does not indicate that the manager perceived him as unable to work in a class of jobs. A lifting restriction, without more, is not a disability. *See Brunko*, 260 F.3d at 941 (40-pound lifting restriction); *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir. 1998) (45-pound lifting restriction), *cert. denied*, 526 U.S. 1113 (1999). "It logically follows then that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA." *Conant v. City of Hibbing*, 271 F.3d 782, 785 (8th Cir. 2001). An employer may decide that individuals with some limiting, but not *substantially* limiting, impairments are less than ideally suited for a particular job. *Sutton*, 527 U.S. at 490-91. Missouri-American placed Wenzel on light duty believing he would resume working as a Utility III. Relying on the doctor's three monthly restrictions to lifting 35 pounds, Missouri-American believed his condition was permanent. *See Ollie v. Titan Tire Corp.*, 336 F.3d 680, 686 (8th Cir. 2003). The record shows Missouri-American placed Wenzel on medical leave, believing he was unqualified for his job, not that he was disabled for a broad range of jobs.

Employers are free to make decisions based upon mistaken evaluations, "except to the extent that those judgments involve intentional discrimination." *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685-86 (8th Cir. 2002). The purpose of the

ADA was to combat "'archaic attitudes,' erroneous perceptions, and myths" that disadvantage persons regarded as having a disability. *Wooten*, 58 F.3d at 386, *quoting School Bd. of Nassau County v. Arline*, 480 U.S. 273, 279 (1987). Wenzel fails to demonstrate that Missouri-American regarded him as having a disability.

II.

Because there is no direct evidence of retaliation, the *McDonnell Douglas* framework again applies. *Manning v. Metropolitan Life Ins. Co., Inc.,* 127 F.3d 686, 692 (8th Cir. 1997). Wenzel must first demonstrate a prima facie case: he engaged in a protected activity, and suffered an adverse employment action, with a causal connection between the two. *Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003). Once the prima facie case is met, Missouri-American must rebut the presumption of retaliation by advancing a legitimate, nondiscriminatory reason for its action. *See Manning*, 127 F.3d at 692. If Missouri-American meets its burden, Wenzel must show that the proffered reason is an unlawful pretext. *See id.*

Wenzel argues that after he submitted his second release in January 2003, he was entitled to return to work immediately, and Missouri-American retaliated by delaying full duty until April – a four-month delay. As evidence of retaliation, he states that less than three weeks after Missouri-American was alerted to his disability discrimination claim, it rejected his second release.

Finding no causal connection, the district court held that Wenzel failed to establish a prima facie case. This court holds Wenzel did not make a prima facie case, but with a different focus, ultimately on the causation element. *See Saulsberry v. St. Mary's University of Minnesota*, 318 F.3d 862, 866 (8th Cir. 2003) (summary judgment may be affirmed on any ground supported by the record, even if not relied upon by the district court).

-6-

All parties agree that Wenzel engaged in the protected activity of filing a disability claim. Whether he suffered an adverse employment action is not as clear. A materially adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). There must be a material change in employment status – a reduction in title, salary, or benefits. *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997). After Wenzel filed his disability discrimination claim, there was almost no change in Wenzel's employment status. He held the title of Utility III throughout. He received the amount of pay (after arbitration and mediation) appropriate for all 18 months of leave.

As a change in employment status, Wenzel identifies the four-month delay in returning to work. Assuming that such a delay can be a change in employment status, this period of time resulted from the continuing mutual dispute between Wenzel and Missouri-American. The delay was not the result of retaliation. From the outset Wenzel had to provide a satisfactory release before returning to work, and Missouri-American was entitled to demand a second opinion. *See Executive Life Ins. Co. of New York v. Alexander Ins. Ltd.*, 999 F.2d 318, 320 (8th Cir. 1993). An employer's request that an employee undergo mental and physical examinations, for valid reasons, does not prove discrimination or an adverse job action. *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 813 (6th Cir. 1999). Likewise, an employer's request for a second opinion, which an arbitrator specifically granted, does not constitute a material change in employment. In sum, Wenzel delayed his own return by not complying with the arbitrator's decision. He did not meet his prima facie burden.

Wenzel also complains that the district court granted summary judgment on an issue not raised by the parties. This court will not reverse a grant of summary judgment if the district court's findings on other properly addressed issues foreclose the unraised issue. *Interco Inc. v. National Sur. Corp.*, 900 F.2d 1264, 1269 (8th

Cir. 1990).  Because Wenzel did not make a prima facie case, the remaining, burden-shifting issues of *McDonnell Douglas* are preempted.

The judgment of the district court is affirmed.

_____