# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4045

_____

Earl Mitchell,                  *

                                *     Appeal from the United States

        Plaintiff - Appellant,    *     District Court for the

                                *     Eastern District of Arkansas

      v.                     *

                                *     [UNPUBLISHED]

City of Dumas, Arkansas,    *

                                *

        Defendant - Appellee.    *

_____

Submitted: June 16, 2006
Filed: July 11, 2006

_____

Before ARNOLD and BEAM, Circuit Judges, and DOTY,[1] District Judge

_____

DOTY, District Judge.

Earl Mitchell sued the City of Dumas (the "City") alleging that he suffered a hostile work environment and that his employment was unlawfully terminated based on race. The district court[2] granted summary judgment in favor of the City. Mitchell appeals and we affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

## I.  BACKGROUND

Mitchell, a black male, worked as an at-will employee for the City from March 1, 1996, until his termination on August 19, 2003.  From 1996 to September of 2001, he worked in the street department under the supervision of Kenneth Smallwood.  Thereafter, he worked in the water/sewer department under the supervision of Wayne Freeman. On numerous occasions during his employment in the street department, Mitchell complained to Smallwood and City Mayor Clay Oldner about alleged pay disparities between black and white employees.  Although he may have received a pay raise in response to one or more of his complaints, he alleges that race-based pay discrepancies remained.

In 1998 and 2002, Smallwood accused Mitchell of stealing City property.  On both occasions, Mitchell provided an explanation and did not receive a reprimand or other disciplinary action.  Mitchell alleges that Smallwood began spying on him sometime before 2001 and throughout the remainder of his employment with the City. He complained to Oldner, but the spying continued.  He also alleges that Smallwood and Oldner called him "Bubba" on several occasions, which he understood to mean "nigger." He told them that he did not like being called "Bubba."  Smallwood stopped using the term, but Oldner did not.

Before July 3, 2003, employees in the street and water/sewer departments were allowed to borrow City equipment without prior approval.  However, on July 3 the City changed its policy to require permission from a supervisor before borrowing equipment.  The new policy was posted in three locations visible to employees, but Mitchell alleges that he did not become aware of it.  On August 15, 2003, Mitchell borrowed a City trailer and mower without permission from his supervisor. Smallwood discovered the incident and terminated Mitchell's employment with the City on August 19, 2003, for violating the new policy.  Mitchell unsuccessfully filed

grievances with Oldner, the City's Personnel Policy Committee and the City Council. On October 20, 2003, he filed a charge of discrimination with the Equal Employment Opportunity Commission.

On December 18, 2003, Mitchell brought this lawsuit alleging a hostile work environment and termination based on race. The district court granted summary judgment in favor of the City. On appeal, Mitchell contends that he has alleged sufficient facts to support his claims of racial harassment and discrimination.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment in favor of defendant. Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir.), cert. denied, 540 U.S. 823 (2003). **Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."** Fed. R. Civ. P. 56(c). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). We view all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

### A.    Hostile Work Environment

Mitchell claims that he suffered racial harassment while working for the City. An employee experiences a hostile work environment when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)). To succeed on a hostile work environment claim, a plaintiff must show that (1) he belongs to a protected group, (2) he was subject to unwelcome harassment, (3) a causal nexus exists between the harassment and the protected group status, (4) the harassment affected a term, condition, or privilege of his employment and (5) the employer knew or should have known of the harassment and failed to properly respond. Tademe v. St. Cloud State Univ., 328 F.3d 982, 991 (8th Cir. 2003).

To determine whether a plaintiff has demonstrated that the harassment affected a term, condition or privilege of his employment, we look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843 (8th Cir. 2002) (citing Harris, 510 U.S. at 21-23). However, we must avoid imposing "a code of workplace civility." Id. at 843. "More than a few isolated incidents are required," and the harassment must be so intimidating, offensive, or hostile that it "poisoned the work environment." Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 967 (8th Cir. 1999) (citations omitted). The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not rise to an actionable level. Meritor Sav. Bank, 477 U.S. at 67.

The district court concluded that Mitchell failed to allege sufficient facts to show that any harassment of him was a result of his race or was severe or pervasive enough to affect a term, condition or privilege of his employment. As to severity and pervasiveness in particular, the isolated actions and comments by Smallwood and Oldner were at most unpleasant or rude, but not hostile. See Willis v. Henderson, 262 F.3d 801, 809 (8th Cir. 2001) (unpleasant conduct and rude comments do not rise to

level of Title VII violation). In these circumstances, the district court properly granted summary judgment on Mitchell's hostile work environment claim.

**B.     Disparate Treatment**

The district court granted summary judgment in favor of the City on Mitchell's claims that the City unlawfully discriminated against him by paying him less than white employees and terminating his employment based on his race. Mitchell appeals the summary judgment ruling only as to the alleged unlawful termination. We examine his claim under the burden-shifting analysis first set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Wheeler v. Aventis Pharms., 360 F.3d 853, 857 (8th Cir. 2004). The analysis proceeds in three steps. See Wenzel v. Mo.-Am. Water Co., 404 F.3d 1038, 1040 (8th Cir. 2005). First, a plaintiff must establish a prima facie case of discrimination. See id. If successful, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its conduct. See id. If the defendant offers such a reason, the plaintiff must then demonstrate that the reason is really a pretext for unlawful discrimination. See id.

To establish a prima facie case of race discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action and (4) circumstances exist which give rise to an inference of discrimination. See Wheeler, 360 F.3d at 857. A party may prove the fourth element by showing that "similarly situated employees, who are not black, were treated differently." Id. We consider "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. Alternatively, a plaintiff can satisfy the fourth element by providing other evidence that the employer terminated him because of his race. See Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995) (plaintiff established fourth prong by

providing evidence that supervisor was racist and that employer's proffered reason for terminating him was pretextual).

The district court determined that Mitchell failed to meet his prima facie burden because he did not show that similarly situated employees were treated differently or otherwise present any evidence that raises an inference of discrimination. On appeal, Mitchell argues that the actions of Smallwood and Oldner demonstrate that his termination was motivated by race. He also points to testimony that his supervisor in the sewer/water department did not agree with the decision to terminate him. Contrary to Mitchell's argument, none of the facts alleged raise an inference that his termination was race-based. We conclude that the district court properly granted summary judgment in favor of the City on Mitchell's employment discrimination claim.

## III.    CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment in favor of defendant.

_____