2009 Ark. App. 774

**A.C. FREIN, and Billye R. Frein, Trustees of the A.C. Frein and Billye R. Frein Revocable Trust; A.C. Frein, Trustee of A.C. Frein Revocable Trust; Billye R. Frein, Trustee of Billye R. Frein Revocable Trust; V.W. Williams Company, A Partnership; Mark M. Waldrip and Angela Waldrip; Angela Eason Waldrip, Individually and as Custodian of Minor Children; Angela Eason Waldrip, As**

Custodian; Waldrip Farms, Inc.; Lowell Waldrip and Elizabeth Waldrip; And Rosa Mae Eason, Trustee of the Freemont D. Eason Irrevocable Trust and the Rosa Mae Eason Revocable Trust, Appellants,

v.

**WINDSOR WEEPING MARY, LP (as Successor in Interest to Windsor Weeping Mary, LLC), Appellee.**

No. CA 09–309.

Court of Appeals of Arkansas.

Nov. 18, 2009.

Lonnie C. Turner, Ozark, and Hardin, Jesson & Terry, PLC, by: Rex M. Terry, Forth Smith, for appellants.

Womack, Landis, Phelps & McNeill, P.A., by: J.V. Phelps and Serena T. Green, Jonesboro, for appellee.

JOHN B. ROBBINS, Judge.

Appellants A.C. Frein, et al., are owners individually, or through living trusts, of real property totaling about 7000 acres in Lee County. On November 4, 2005, the appellants entered into lease agreements with Windsor Weeping Mary, LLC. Appellee Windsor Weeping Mary, LP, is the successor in interest on the leases. Each of the agreements granted Windsor Weeping Mary a lease on the land for the purpose of exploring and drilling for oil and gas, and each lease was for a duration of five years and as long thereafter as gas could be produced.

On April 27, 2007, Windsor Weeping Mary filed releases of each of the respective leases. Appellants subsequently filed a breach of contract action, asserting that the appellee's failure to drill wells on any of the property violated the parties' agreement and resulted in unjust enrichment. Windsor Weeping Mary filed a motion for summary judgment, and the trial court granted the motion based on a provision in the leases that permitted the lessee to cancel the leases by filing releases in the proper county.[1] A.C. Frein, et al., now appeal, arguing that the trial court erred in granting summary judgment in favor of Windsor Weeping Mary. We affirm.

Summary judgment is no longer viewed as a drastic remedy; rather it is viewed simply as one of the tools in a circuit court's efficiency arsenal. *Marlar v. Daniel*, 368 Ark. 505, 247 S.W.3d 473 (2007). It should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Smith v. Rogers Group, Inc.*, 348 Ark. 241, 72 S.W.3d 450 (2002). All proof must be viewed in the light most favorable to the nonmoving party, and any doubts must be resolved against the moving party. *Id.* Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.*

The oil and gas leases at issue in this case contain a provision that Windsor Weeping Mary shall make royalty payments to the landowners equal to seventeen percent of the proceeds for the gas produced and sold. Paragraph twelve of each lease provides, "Lessee may at any time surrender or cancel this lease in whole or in part by delivering or mailing such release to the Lessor, or by placing such release of record in the proper county." Attached to each lease was EXHIBIT "A," which was "made a part hereof."

Paragraph one of EXHIBIT "A" provides, "It is the purpose and intent of this Addendum to control the provisions of said Oil & Gas lease and to the [sic] extent the terms and provisions of this Addendum shall be paramount and controlling notwithstanding anything to the contrary in said Oil & Gas Lease." EXHIBIT "A" contains numerous paragraphs setting forth rights and obligations of the parties, and further provides, "This lease is subject to that certain Letter Agreement dated November 4, 2005, herein incorporated as if herein written."

The Letter Agreement provides:
The undersigned, as agent for Windsor Weeping Mary LLC, a Delaware Limited Liability Company, does hereby agree to drill or cause to be drilled at a minimum, two (2) oil and gas wells to a depth sufficient enough to test the "Fayetteville Shale" during the first eighteen (18) months thereof, on the lands covered by the oil and gas leases dated November 4, 2005, by and between the

---

1. The appellants also filed a motion for summary judgment, which the trial court denied.

mineral owners listed on the attached list, as Lessors and Windsor Weeping Mary LLC, as Lessee.

Should any other owner of Oil & Gas Leases begin the drilling of a well on a unit that includes lands that are a part of the Oil & Gas Leases as set forth on Exhibit "A" herein, then this shall also act to satisfy the conditions of this drilling commitment.

This commitment is understood to mean two (2) wells on any of the total of approximately 7,152.28 net mineral acres and not two (2) wells for every mineral owner whose name is attached hereto. This commitment will be deemed to have been completed if a well is drilled on any of the attached parcels or spacing units including any of these parcels.

The balance of the bonus due shall be paid at the rate of $285.00 per net mineral acre confirmed by mineral title check, in accordance with the lease terms as set forth in the payment draft.

On February 15, 2007, an agent of Windsor Weeping Mary sent a letter to Mr. Frein regarding the parties' lease. This letter stated in relevant part:

As you may know, we have been preparing for these two wells for quite some time, however, due to the lack of any apparent drilling success by other operators in the immediate area, I have been informed that I will not receive the necessary drilling budget before the May 4, 2007 deadline. We have contacted several other operators that have been active in the area to see if any would consider operations on our leases, but they have all declined after having shifted their drilling activities a couple of Counties westerly. It now appears no one is planning further drilling in Lee County until successful operations in the west move closer.

I was not involved in the negotiations for this agreement, but on reading it, I find that it does not specify what the penalty for failure to drill within the specified time would be. I would like to propose that this drilling commitment be extended until November 4, 2008, at which time, if the commitment has not been met, the leases will terminate and we will issue a release of Oil & Gas Lease.

Should the above be acceptable, please so indicate by signing in the space provided below and returning one copy of this letter to my attention.

The landowners did not accept the proposal to extend the drilling date, and on April 27, 2007, Windsor Weeping Mary filed releases of each of the respective leases. In the landowners' subsequent complaint for breach of contract and unjust enrichment, they claimed damages equal to the money saved by the appellee by virtue of not drilling two wells to a depth sufficient to test the Fayetteville Shale as contemplated by the Letter Agreement. In its order granting summary judgment for Windsor Weeping Mary, the trial court ruled that having exercised its right to abandon the leases within eighteen months of execution, the lessee was under no obligation to continue drilling operations upon the leased property. The trial court found as a matter of law that appellants had no claim for breach of contract or unjust enrichment, and accordingly did not address the issue of damages.

On appeal from the summary judgment entered in favor of the appellee, the appellants argue that the appellee breached the contract for two reasons. Appellants first argue that paragraph twelve of the leases, which permitted Windsor Weeping Mary to cancel the leases, was invalid for want of mutuality. Next, appellants contend that, even if paragraph

twelve is not deemed to be invalid for want of mutuality, it was in conflict with the attached EXHIBIT "A" and Letter Agreement, which provided that these addenda controlled the provisions of the oil and gas lease notwithstanding anything to the contrary in the lease. Appellants submit that, contrary to the terms of paragraph twelve of the lease, the Letter Agreement was a commitment by the appellee to drill two wells within eighteen months of its execution, which it subsequently breached by releasing the leases.

In support of their argument pertaining to mutuality, appellants cite *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). In that case, the supreme court held that one of the essential elements of a contract is the concept of mutual obligations. *Id.* Mutual promises that constitute consideration for each other are the classic method of satisfying the doctrine of mutuality. *Id.* In that case, the supreme court held that an arbitration agreement between Showmethemoney Check Cashers and its customers was invalid because it was binding only on the customers. *Id.* In the present case, A.C. Frein, et al., assert that because the privilege of cancelling the leases rested solely with Windsor Weeping Mary, and the landowners had no such privilege, there was a lack of mutuality of obligations.

We hold that there was no violation of the mutuality doctrine in this case because, by the terms of the Letter Agreement, the appellee was required to pay the landowners a signing bonus at the rate of $285 per acre confirmed by mineral title check, which appellee paid in the aggregate amount of well over a million dollars. Therefore, the contract imposed a promise on the appellee, which it performed. Moreover, in *Jordan v. Diamond Equip. & Supply Co.*, 362 Ark. 142, 207 S.W.3d 525 (2005), the supreme court stated that mutuality of obligation involves the exchange of promises, and that it becomes "a nonissue" when performance is given. As there is no dispute that the appellee performed on its promise to pay the signing bonus, appellants' argument that there was no mutuality of obligation fails.

▮ Nor do we agree with appellants' argument that there was contrary language in either EXHIBIT "A" or the Letter Agreement such as would nullify paragraph twelve of the lease. Appellants correctly cite *Graves v. Graves*, 7 Ark. App. 202, 646 S.W.2d 26 (1983), for the proposition that when different instruments are executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, they are in the eyes of the law one instrument to be read and construed together. However, the three instruments in this case can be construed harmoniously. The oil and gas leases succinctly provide that the lessee may cancel the leases at any time, and there is simply no conflicting language to that provision in either EXHIBIT "A" or the Letter Agreement. While the Letter Agreement does contain a commitment by the appellee to drill two wells within eighteen months and such agreement is incorporated in the leases, the appellee had the express option of cancelling the leases and exercised that option before eighteen months elapsed.

The appellants next make the argument that they properly stated a claim against the appellee for unjust enrichment. We do not agree.

▮ Our supreme court explained the doctrine of unjust enrichment as follows in *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 612, 210 S.W.3d 101, 112 (2005):

Unjust enrichment is an equitable doctrine. *First Nat'l Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005). It is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Adkinson v. Kilgore,* 62 Ark. App. 247, 970 S.W.2d 327 (1998). However, the concept of unjust enrichment has no application when an express written contract exists. *Id.*

Here, there was a written contract between the parties, and the doctrine does not apply. The appellants note that there is an exception to this general rule where the contract does not fully address the subject, and a court of equity may impose a remedy to further the ends of justice. *See QHG of Springdale, Inc. v. Archer,* 2009 Ark. App. 692, — S.W.3d —, 2009 WL 3400690; *Klein v. Arkoma Production Co.,* 73 F.3d 779 (8th Cir.1996). However, there was no basis to support an unjust enrichment claim in this case. As the appellee argues in its brief, it never received anything at the expense of the landowners, and there would be nothing equitable in requiring the appellee to pay the expenses it saved in not drilling the two wells, which appellants estimate at three million dollars.

Also under this point, the appellants assert that damages are due pursuant to the precedent in *Eysenback v. Cardinal Petroleum Co.,* 110 Okla. 12, 236 P. 10 (1925), where the Oklahoma Supreme Court held that the measure of damages for breach of a drilling contract in that case was the cost of drilling the wells. However, that case is not binding on this court, and even if it

were, it is clearly distinguishable. That is because, as found by the trial court in this case, Windsor Weeping Mary did not breach the contract. There was simply no basis upon which damages could have been awarded to appellants on its theory of unjust enrichment.

Finally, we recognize that, citing *SEECO, Inc. v. Hales,* 341 Ark. 673, 22 S.W.3d 157 (2000), appellants claim that Windsor Weeping Mary owed a fiduciary duty to its lessors, and that it violated that duty by not acting in the mutual interests of the parties and being forthcoming with information. However, that case is inapposite in that it involved active drilling operations and the obligations of a gas producer concerning payments and representations made to royalty owners. The appellants herein have cited no authority nor made any convincing argument supporting their nonspecific allegation that the appellee breached some duty owed. Nor was the argument developed before the trial court. Therefore, it provides no basis for reversal. *See Watt v. Office of Child Support Enforcement,* 364 Ark. 236, 217 S.W.3d 785 (2005).

Viewing the proof in the light most favorable to the appellants, we hold that there were no genuine issues of material fact to be litigated and that the appellee was entitled to judgment as a matter of law. Therefore, we affirm the trial court's order granting summary judgment for the appellee.

Affirmed.

VAUGHT, C.J., and HART, J., agree.