# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2448

_____

First Tennessee Bank National Association, in its capacity as Trustee under agreement with Russell C. Gregg for Mary Loeb and Frances Petersmeyer; Trustee under will of Irene C. Gregg for Mary Loeb and Fances Petersmeyer; Charles Kelley Lewis; Rufie Hard Lewis; Ralph Emerson Lewis; Henry Lincoln Gregg Lewis; Michael Pritchard; Irene Calhoun Pritchard; Thomas L. Brown; Vol Walker Pritchard; Fereshteh Richard; Ross J. Pritchard; Rebecca Pritchard; Mehran Gregg Pritchard

*Plaintiffs - Appellants*

v.

Pathfinder Exploration, LLC; CEP Equity I, LLC; CEU Fayetteville, LLC; XTO Energy, Inc., a subsidiary of Exxon Mobil Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 17, 2014
Filed: May 14, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

First Tennessee Bank National Association is a trustee of Gregg family trusts. First Tennessee (and members of the Gregg family) sued Pathfinder Exploration, LLC (and its assignees) for breaching an oil and gas lease. The district court[1] granted Pathfinder summary judgment. First Tennessee appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

The trusts own mineral rights to land in White and Prairie counties, Arkansas. The trusts leased the rights to Pathfinder.[2] The lease has a form contract and an addendum. The contract says that Pathfinder "may at any time and from time to time surrender this lease as to any part or parts of the leased premises . . . ." The addendum says:

2. The bonus consideration paid to Lessor for this lease includes consideration of $350.00 per net mineral acre which is due and payable on or before 45 days after Lessee's execution of this lease. This lease is a "Paid Up" lease with the initial bonus paid in lieu of any delay rental provision. The obligation to pay the bonus consideration is absolute and shall not be abrogated by the unilateral release of this lease by Lessee . . . .

3. During the primary term hereof [five years] or any extensions as provided for herein, Lessee shall have the obligation to drill or cause to be drilled five (5) oil & gas wells on the leased premises . . . . In the event that Lessee fails to drill the obligated wells during the primary term hereof or any extension thereof, Lessee will pay to Lessor the sum

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[2]The parties dispute whether there was a single lease, or four separate and identical leases by four branches of the family. Because this is irrelevant here, this court refers to "the lease."

of $100,000 per well not commenced, due immediately upon the expiration of the primary term or any extension as provided for herein. . . .

Pathfinder paid $2,300,433.49 as up-front bonus consideration under Section 2. It surrendered the lease before the primary term expired, and before drilling any wells. It did not pay the amount in Section 3, arguing that it surrendered the lease before the primary term expired. First Tennessee sued Pathfinder for the amount in Section 3. The district court granted summary judgment to Pathfinder, finding the case analogous to *Frein v. Windsor Weeping Mary, LP*, 366 S.W.3d 367 (Ark. App. 2009).

Summary judgment is appropriate when, construing the evidence favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56**; ***Hutson v. McDonnell Douglas Corp.***, 63 F.3d 771, 775 (8th Cir. 1995). Summary judgment is subject to de novo review, drawing all reasonable inferences in favor of the nonmoving party. ***Wenzel v. Missouri-American Water Co.***, 404 F.3d 1038, 1039 (8th Cir. 2005). "Although federal courts are not bound to follow the decisions of intermediate state courts when interpreting state law, state appellate court decisions are highly persuasive." ***Baxter Int'l, Inc. v. Morris***, 976 F.2d 1189, 1196 (8th Cir. 1992). This court "follow[s] decisions from the intermediate state courts when they are best evidence of [state] law." ***Washington v. Countrywide Home Loans, Inc.***, No. 12-3428, 2014 WL 998185 (8th Cir. Mar. 17, 2014), *quoting* ***Eubank v. Kansas City Power & Light Co.***, 626 F.3d 424, 427 (8th Cir. 2010). "Intermediate state court decisions should not be disregarded 'unless [this court is] convinced by other persuasive data that the highest state court would decide . . . otherwise.'" ***United Fire & Cas. Ins. Co. v. Harvey***, 328 F.3d 411, 413 (8th Cir. 2003), *quoting* ***Commissioner v. Estate of Bosch***, 387 U.S. 456, 465 (1967).

The facts in *Frein* are similar to this case. Defendant lessee entered oil and gas leases with plaintiff lessors. The leases were paid up, at $285 per net mineral acre. The leases had a surrender clause: "Lessee may at any time surrender or cancel this lease in whole or in part by delivering or mailing such release to the Lessor." The leases required that the lessees drill two wells during the first 18 months of the lease term. The lessees surrendered the leases before 18 months had passed, and before drilling the wells. The lessors sued for "damages equal to the money saved by the appellee by virtue of not drilling two wells." *Frein*, 366 S.W.3d at 370. The court found that although the leases did "contain a commitment by the appellee to drill two wells within eighteen months . . . the appellee had the express option of cancelling the leases and exercised that option before eighteen months elapsed." *Id.* at 371. Although the lessees had a unilateral ability to surrender the leases, "there was no violation of the mutuality doctrine in this case because . . . the appellee was required to pay the landowners a signing bonus at the rate of $285 per acre . . . which appellee paid in the aggregate amount of well over a million dollars. Therefore, the contract imposed a promise on the appellee, which it performed." *Id.*

First Tennessee does not argue that *Frein* was wrongly decided or is not the best evidence of Arkansas law. Instead, it argues that the terms of the leases in *Frein* are "nothing like" the terms here. According to First Tennessee, the lease here is distinguishable because (1) the nonabrogable "bonus consideration" includes the drilling requirement and its liquidated damages, and (2) Pathfinder could not surrender the entire lease.

According to First Tennessee, the drilling requirement is part of the nonabrogable bonus consideration. The *Frein* leases stated: "PAID-UP: The consideration paid to Lessor for this Lease includes consideration in lieu of delay rental provisions." A separate Letter Agreement, incorporated in the leases, gave the drilling requirement. Here, the lease states: "The bonus consideration paid to Lessor for this lease includes consideration of $350.00 per mineral acre . . . . This lease is

a 'Paid Up' lease with the initial bonus paid in lieu of any delay rental provision." A later section of the lease gives the drilling requirement. In both cases, the drilling requirement is separate from the no-rent clause. In both cases, the "paid up" consideration is a payment at the beginning of the lease, not at the expiration of the lease term. *See* **Ark. Code § 15-56-405** (distinguishing bonus consideration from delay rentals in mineral leases). Indeed, when Pathfinder paid the $2,300,433.49, First Tennessee's representative signed a form stating that the amount was "full payment and consideration [of] all bonus obligations owed to the Lessors under the Leases." The relation between the drilling requirement and the bonus consideration is the same here as in *Frein*. That damages here were liquidated, but required proof in *Frein*, does not change the analysis. *Cf.* **Foran v. Wisconsin & Ark. Lumber Co.**, 246 S.W. 848, 850 (Ark. 1923) (finding significant a surety bond—not liquidated damages—in upholding a drilling requirement over a surrender clause).

First Tennessee believes the surrender clauses are distinguishable. The lease in *Frein* stated, "Lessee may at any time surrender or cancel this lease in whole or in part." **Frein**, 366 S.W.3d at 369. Here, the lease states, "Lessee may at any time . . . surrender this lease as to any part or parts." Absent limiting language, surrender as to "any" part necessarily includes surrender or cancellation of the "whole." *See generally* **Fuller v. Phillips Petroleum Co.**, 872 F.2d 655, 659 (5th Cir. 1989) ("In the oil and gas industry, the term 'surrender' refers to the contractual right of a lessee to voluntarily relinquish to the lessor *all or part* of the leased premises.") (emphasis added); **Ford v. Miller**, 232 S.W. 604, 605 (Ark. 1921) (equating "surrender" and "cancellation" of a lease). Consistent with this, the lease noted that "the unilateral release of this lease" by Pathfinder does not abrogate its obligation to pay the up-front bonus consideration.

As in *Frein*, a large up-front payment with a surrender clause creates an option to cancel the lease, which Pathfinder exercised. *See* **Frein**, 366 S.W.3d at 371 ("[T]he appellee had the express option of cancelling the leases and exercised that

option before eighteen months elapsed."); ***Hughes v. El Dorado Union Oil Co.***, 254 S.W. 663, 664 (Ark. 1923) ("A contract must be construed as a whole, and all of its parts must be construed to determine the meaning of any particular part as well as of the whole."). *Cf.* ***Lawrence v. Mahoney***, 225 S.W. 340, 343 (Ark. 1920) (affirming a surrender provision in an oil and gas exploration lease given for nominal consideration), *citing* ***Guffey v. Smith***, 237 U.S. 101, 115-16 (1915).

*Frein* is the best evidence of Arkansas law. This case is not distinguishable.[3]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[3]On appeal, First Tennessee alludes to, but makes no separate argument about, violation of the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101 et seq.