# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1934

_____

Red River Freethinkers

*Plaintiff - Appellant*

v.

City of Fargo

*Defendant - Appellee*

------------------------------

Eagle Forum Education and Legal Defense Fund

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: May 15, 2014
Filed: August 25, 2014

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The Red River Freethinkers oppose a Ten Commandments monument in Fargo, North Dakota. The district court[1] found the monument permissible under the Establishment Clause. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

The monument here is essentially the same as those in *Van Orden v. Perry*, 545 U.S. 677 (2005), and *ACLU Nebraska Foundation v. City of Plattsmouth, Nebraska*, 419 F.3d 772 (8th Cir. 2005) (en banc). It was donated by the Fraternal Order of Eagles in 1958. It sits passively on the Civic Plaza. It shows the Ten Commandments alongside other symbols, such as the American flag and an "all-seeing eye" within a pyramid. *See **Twombly v. City of Fargo***, 388 F. Supp. 2d 983, 984-86, 992-93 (D.N.D. 2005) (reciting the history of this monument and finding it permissible under *Van Orden* and *Plattsmouth*).

In response to the Freethinkers' offer of another monument, the City decided to relocate the Ten Commandments monument (which had sat undisturbed for over 40 years). *See **Red River Freethinkers v. City of Fargo***, 679 F.3d 1015, 1017-18 (8th Cir. 2012) (*Freethinkers I*) (describing previous litigation). Many opposed the City's decision. A petition to keep the monument gathered more than 5,000 signatures. The petition gave the Board of City Commissioners the option to adopt, or submit to the voters, the following ordinance: "A marker or monument on City of Fargo property for 40 or more years may not be removed from its location on City of Fargo property." Many of the supporters invoked Christian principles. Others made statements such as "the monument has been at its current location for a long time," and "this is a democracy and the majority have spoken to have [the monument] remain."

After reviewing the petition, the City adopted the ordinance, leaving the monument in place. A month later, the City adopted a policy of not accepting

---

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota.

additional monuments on the Civic Plaza. The Freethinkers sued, claiming that the petition and the City's reaction had made the monument impermissible under the Establishment Clause. The district court dismissed for lack of standing, but this court reversed and remanded for a decision on the merits. *Freethinkers I*, 679 F.3d at 1028. On remand, the district court granted summary judgment to the City. The Freethinkers appeal.

Summary judgment is appropriate when, construing the evidence favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. **Fed. R. Civ. P. 56**; ***Hutson v. McDonnell Douglas Corp.***, 63 F.3d 771, 775 (8th Cir. 1995). Summary judgment is subject to de novo review, drawing all reasonable inferences in favor of the nonmoving party. ***Wenzel v. Missouri-American Water Co.***, 404 F.3d 1038, 1039 (8th Cir. 2005).

A passive display of the Ten Commandments on public land is evaluated by the standard in *Van Orden v. Perry*, 545 U.S. at 690-91, which found *Lemon v. Kurtzman*, 403 U.S. 602 (1971), "not useful in dealing with [a] passive monument." *Van Orden,* 545 U.S. at 686. The monument there stood in the Texas Capitol grounds for 40 years, alongside secular symbols. The Supreme Court found that "Texas has treated its Capitol grounds monuments as representing the several strands in the State's political and legal history." *Id.* at 691. It noted that the Ten Commandments monument had "a dual significance, partaking of both religion and government." *Id.* at 692. The Supreme Court held the monument permissible under the Establishment Clause. *Id.* This court found *Van Orden* controlling in *Plattsmouth*: "The Supreme Court's decision in *Van Orden* governs our resolution of this case. Like the Ten Commandments monument at issue in *Van Orden*, the Plattsmouth monument makes passive—and permissible—use of the text of the Ten Commandments to acknowledge the role of religion in our Nation's heritage." *Plattsmouth*, 419 F.3d at 776-77.

*Van Orden* and *Plattsmouth* control here unless this monument is different. The monument has not been physically altered. *See Staley v. Harris Cnty., Tex.*, 461 F.3d 504, 514 (5th Cir. 2006), *reh'g en banc*, 485 F.3d 305 (5th Cir. 2007) (addition of a neon light around a Bible changed the meaning of a monument). It sat undisturbed for many years. *See Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F.3d 784, 806 (10th Cir. 2009) (noting that "years of tranquility 'suggest more strongly than can any set of formulaic tests that few individuals, whatever their system of beliefs, are likely to have understood the monument as amounting, in any significantly detrimental way, to a government effort to favor a particular religious sect, primarily to promote religion over nonreligion.'"), *quoting Van Orden*, 545 U.S. at 702 (Breyer, J., concurring). The Freethinkers claim that the Christian overtones to the petition movement changed public perception of the monument. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 477 (2009) ("The message conveyed by a monument may change over time. A study of war memorials found that people reinterpret the meaning of these memorials as historical interpretations and the society around them changes.") (quotations omitted); *McCreary Cnty., Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 862 (2005) (allowing examination of legislative history in an Establishment Clause challenge); *American Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1118 (10th Cir. 2010) (attributing motivation of private actors to government officials).

*Summum* examined the effect of communal action on a public monument. The Supreme Court said that

> it frequently is not possible to identify a single "message" that is conveyed by an object or structure, and consequently, the thoughts or sentiments expressed by a government entity that accepts and displays such an object may be quite different from those of either its creator or its donor. . . . Indeed, when a privately donated memorial is funded by many small donations, the donors themselves may differ in their interpretation of the monument's significance. By accepting such a

-4-

monument, a government entity does not necessarily endorse the specific meaning that any particular donor sees in the monument.

*Summum*, 555 U.S. at 476-77 (footnotes omitted). The petition here parallels the fund drive in *Summum*. The petitioners combined "many small donations" of political will to sway the City. They expressed both religious and secular reasons to retain the monument. The Board of City Commissioners did not adopt a religious point of view, instead citing legal challenges, the City's interest in ending anguished debate, and the importance of embracing and tolerating "all people." By adopting the petition, the City did not "necessarily endorse the specific meaning that any particular [petitioner] sees in the monument." *Id.*

The monument here is permissible under *Van Orden* and *Plattsmouth*. The Freethinkers' lawsuit, and the various motives of the petitioners who responded, did not change its meaning under *Summum*. A contrary holding—that an Establishment Clause dispute *itself* can render a monument impermissible under the Establishment Clause—would "encourage disputes concerning the removal of longstanding depictions of the Ten Commandments . . . [and] thereby create the very kind of religiously based divisiveness that the Establishment Clause seeks to avoid." *Van Orden*, 545 U.S. at 704 (Breyer, J., concurring). The district court correctly granted summary judgment that the monument does not violate the Establishment Clause.[2]

\* \* \* \* \* \* \*

The judgment is affirmed.

---

[2]The Freethinkers argue that on remand, the district court failed to follow the direction of this court to more thoroughly examine the motivations behind the City's decision. The district court sufficiently addressed the issues this court identified.

BYE, Circuit Judge, dissenting.

I respectfully dissent.

Relying on Van Orden v. Perry, 545 U.S. 677 (2005), and ACLU Nebraska Found. v. City of Plattsmouth, 419 F.3d 772 (8th Cir. 2005), both of which concerned Ten Commandments monuments with some shared history and similar physical characteristics, the majority reasons the Establishment Clause test applied in those cases governs here "unless this monument is different." Ante at 4. I agree with this proposition. Because I conclude particulars of this monument's history and physical surrounding make it different, however, I would apply the test set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971). I further conclude the Red River Freethinkers (Freethinkers) have introduced sufficient evidence to raise questions of material fact for the matter to proceed to trial. Accordingly, I would reverse the grant of summary judgment.

A brief recitation of additional facts not set forth by the majority is useful. In 1958, the Fraternal Order of Eagles (Eagles) donated the monument to the City of Fargo (City). Twombly v. City of Fargo, 388 F. Supp. 2d 983, 984 (D.N.D. 2005). A presenter at the dedication ceremony was Judge E.J. Ruegemer, a Minnesota Juvenile Court Judge and then Chairman of the Eagles National Youth Commission. Id. at 985. In the 1940s, disheartened by a juvenile offender who was ignorant of the Ten Commandments, Judge Ruegemer approached the Eagles with a plan to place paper copies of the Ten Commandments in juvenile courts across the country. Books v. City of Elkhart, Ind., 235 F.3d 292, 294 (7th Cir. 2000). Some changes were made to his original plan, most notably changing the medium from paper to granite monuments. Id. The Eagles ultimately supported the program and, during the 1950s, donated monuments to numerous communities across the country. Id. Many of these monuments have been subject to Establishment Clause challenges. See, e.g., Van Orden, 545 U.S. at 681; Plattsmouth, 419 F.3d at 773-74.

-6-

From this point, the monument at issue here presents its unique history. At the dedication ceremony, the City's then-mayor announced the monument would "occupy a place of honor . . . to be a constant reminder to one and all that Fargo shall go forward only as it respects and lives according to the principles of the Ten Commandments." Twombly, 388 F. Supp. 2d at 985 (citation and quotation marks omitted). The City placed the monument in its Civic Plaza, which, over the years has been used for "political assembly, public advocacy, memorial services, and religious worship." Id. at 992. The Civic Plaza is a grassy open-area mall bounded to the north, south, and east by the Civic Auditorium, Public Library, and City Hall. Id. at 984. From entrances to these public edifices and a city street, five paved pathways intersect at the centrally prominent monument. Id. No other monuments share the mall. Id.

In recent years, the monument has been subject to legal challenges. Initially, several members of the Freethinkers sought declaratory judgment the monument violated the Establishment Clause. Id. After Twombly ruled the monument permissible, the Freethinkers offered to donate a companion monument to place in the mall. Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1018 (8th Cir. 2012) (Freethinkers I).[3] The City Commission rejected the offer. Id. at 1019. The City Commission, however, voted to relocate the Ten Commandments monument to private property. Id. Following this decision, a group of citizens proposed an ordinance permanently preserving the monument in its location (Ordinance).[4] Id.

---

[3]The Freethinkers' proposed monument was to memorialize the text of the 1797 Treaty of Tripoli, in which President John Adams asserted the United States was not founded on the Christian religion.

[4]The City operates under a home-rule charter, which allows citizens to "provide for the adoption . . . of ordinances." N.D. Cent. Code Ann. § 40-05.1-06. Citizens may initiate an ordinance by first collecting signatures of at least 15% of total votes in the most recent mayoral election, and then submitting the initiated ordinance to the City Commission. Fargo Home Rule Charter ch. 4. The City Commission may either adopt or refuse the initiated ordinance. Id. Such a refusal brings the ordinance to a city-wide vote. Id.

Facially, the Ordinance preserved the location of any monument which had been in place on City property for more than 40 years. Id. The Ten Commandments monument, however, is the City's only such monument. Id. at 1019 n.2. While reasons for wanting to keep the monument in its place varied, "[m]any [Ordinance] supporters invoked Christian principles." Ante at 2.

More than 5,000 signatures[5] were collected, enough for the Ordinance to be brought before the City Commission by the next meeting. Freethinkers I, 679 F.3d at 1020. In response, the City Commission voted to reconsider and then reverse its decision to relocate the monument, and scheduled consideration of the Ordinance for its next meeting. Id. This waived a procedural requirement which would have delayed considering the Ordinance. Id. At the next meeting, the City Commission adopted the ordinance instead of putting it to a city-wide vote. See Fargo Mun. Code § 18-0514. This decision prompted the Freethinkers to renew their offer of a companion monument; the City Commission tabled the renewed offer. Freethinkers I, 679 F.3d at 1020. A month later, the City Commission adopted "a policy of not accepting additional monuments to be placed on the Civic Plaza[,]" and rejected the Freethinkers' offer. Id. (citation and quotation marks omitted).

The Freethinkers then brought this suit, alleging the monument, because of the City's actions surrounding the Ordinance, violated the Establishment Clause. Id. at 1015. The district court initially dismissed the action and, on appeal, we remanded to determine "[w]hether the City's actions post-Twombly [had] transformed the Ten

---

[5]The majority analogized the signature drive to a private fund drive in Pleasant Grove City, Utah v. Summum, 555 U.S. 460, 476-77 (2009). There, the Supreme Court reasoned "when a privately donated memorial is funded by many small donations, the donors themselves may differ in their interpretation of the monument's significance. By accepting such a monument, a government entity does not necessarily endorse the specific meaning that any particular donor sees in the monument." Id. I do not believe this analogy is apt – the Ordinance was not a gift, but rather a small group of citizens partaking in the legislative function.

-8-

Commandments monument from a permissible display to an impermissible violation of the Establishment Clause." Id. at 1026. On remand, the district court granted summary judgment to the City.

In affirming the grant, the majority relies on the test set forth in Van Orden, and adopted by this circuit in Plattsmouth. In Van Orden, the Supreme Court considered a Ten Commandments monument on the grounds of the Texas State Capitol. 545 U.S. at 681. The Van Orden monument shared grounds with "17 monuments and 21 historical markers commemorating the people, ideals, and events that compose Texan identity." Id. (citation and internal quotation marks omitted). The plurality in Van Orden held the monument was passive. Id. at 686. For this reason, the Court reasoned the Lemon test was not useful. Id. The Court concluded that, even though the Ten Commandments undoubtedly carry religious content, the monument's display was permissible, because in its surroundings it represented both religious and historical significance. Id. at 691. Van Orden, then, asks us to consider the context surrounding a monument to determine whether it is passive. See, e.g., Green v. Haskell Cnty. Bd. of Comm'rs, 568 F.3d 784, 805 (10th Cir. 2009) (applying the Lemon test after finding "the Haskell County courthouse context [does not bear] a close resemblance to the monument setting in Van Orden.").

The City's Ten Commandments monument stands in substantially dissimilar environs from the monuments in Van Orden and Plattsmouth. Unlike the surroundings found in Van Orden, no other monuments share the Civic Plaza. Indeed, pursuant to the policy the City Commission created after adopting the Ordinance, no others may. No statues honor civic leaders nor do any placards praise historical progress. In Plattsmouth, the monument sat in a 45-acre park, near picnic tables and playgrounds, ten blocks from the nearest government building. 419 F.3d at 774. The City's monument sits alone in the Civic Plaza, a downtown open area approximately an acre in size, flanked on three sides by public buildings. See Twombly, 388 F. Supp. 2d at 985 (describing the distances between the monument

and surrounding city buildings).  From the entrances of those buildings, sidewalks guide a visitor to observe the centrally prominent Ten Commandments monument, where they intersect.  Id.  Because the physical context highlights the religious text, and because the City Commission's decisions grant the Ten Commandments monument a sole, permanent, and prominent location in the Civic Plaza, I conclude the actions of the City have rendered the monument "active" and Van Orden is not helpful.  Accordingly, I would apply the Lemon test.

Under Lemon, we find government action "touch[ing] upon religion is permissible . . . if it has a secular purpose, does not have the primary or principal effect of advancing religion, and does not foster an excessive entanglement with religion."  ACLU v. City of Florissant, 186 F.3d 1095, 1097 (8th Cir. 1999) (citations and quotation marks omitted) (describing the "purpose" and "entanglement" prongs of the Lemon test).  When considering purpose, we view government action as "an objective observer, one who takes account of . . . the text, legislative history, and implementation of the statute, or comparable official act."  McCreary Cnty., Ky. v. ACLU of Ky., 545 U.S. 844, 862 (2005) (citations and quotation marks omitted).  Failing either the purpose or entanglement prong renders a government's action a violation of the Establishment Clause.  See id. at 883.

In granting summary judgment, the district court concluded the Freethinkers had not introduced sufficient evidence the City Commission endorsed the motives of some of the Ordinance's organizers.  I disagree.

First, as evidence of the City Commission's neutrality with regard to the monument, the City points to Commissioners' statements expressing respect for the majority will of the people.  See Appellee's Br. at 7.  We are not bound to take such statements at face value, as the Establishment Clause prohibits even "covert" discrimination between religious and non-religious beliefs.  See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 534 (1993) (quoting

-10-

Bowen v. Roy, 476 U.S. 693, 703 (1986)).  Indeed, we have reason to look past those statements to the actions of the Commission.  Once the Ordinance obtained the required signatures, the City Commission had the option to either put it on the ballot for a city-wide vote or adopt the Ordinance as its own, foregoing a public vote.  Fargo Home Rule Charter ch. 4.  By adopting the Ordinance as its own, then, the City Commission prevented the general public from expressing its will.[6]  An objective observer could find this decision discredits the City's espoused purpose of respecting the will of the majority.

Second, the City Commission acted with relative haste when dealing with the proposals regarding the Ten Commandments monument as compared to those relating to the Freethinkers' offered monument.  Once presented with the Ordinance, the City Commission (1) reconsidered and reversed its decision to relocate the Ten Commandments monument, (2) waived a procedural requirement which would have delayed such consideration, and (3) adopted the Ordinance as its own without a city-wide vote.  This took place in less than a month.  By contrast, the City Commission's treatment of the Freethinkers' proposals was characterized by delay.  After the Freethinkers initially offered a companion monument, the City Commission delayed voting on the proposal until it had explored its options.  Freethinkers I, 679 F.3d at 1018-19.  The City Commission then chose an option which rejected the Freethinkers' monument while allowing the Ten Commandments monument to continue being displayed, albeit on private property.  Id.  When the Freethinkers renewed their offer, the City Commission again tabled it to again consider options, namely whether any monuments could share the City Plaza.  Id. at 1020.  A month later, the City Commission adopted its policy ensuring the Ten Commandments would be the sole monument on the City Plaza, and finally rejected the Freethinkers' offer.  Id.  An objective observer, viewing the relative haste with which the City Commission handled proposals regarding the Ten Commandments monument, could infer the City

[6]The 5,000 plus signatures do not necessarily represent a majority of the City's electors, as the City has more than 100,000 citizens.

-11-

favored the religious message of the Ten Commandments over the secular message of the Freethinkers' monument.

Third, an objective observer could infer the Commission intended for the City government to endorse the religious text on the Ten Commandments monument. As the City Commission initially decided to relocate the Ten Commandments monument to private property rather than remove it, the monument would have remained on display had the City proceeded with its plan to relocate it. Accordingly, the actions of the City Commission served only to ensure the religious message of the monument continued to be displayed on government rather than private property. The policy adopted by the City Commission then had the further effect of conferring on the Ten Commandments monument a special status as the only permanent message allowed in the Civic Plaza.

It is a well-accepted proposition that one ordinarily intends the natural and probable consequences of one's actions. See, e.g., United States v. Diggs, 527 F.2d 509, 513-514 (8th Cir. 1975). Accordingly, an objective observer could infer the City Commission intended to maintain the display of the religious message of the Ten Commandments monument on government grounds and confer on the religious message of the monument special status as the only permanent message in an area used for public assemblies. With this, an objective observer could conclude the monument entangled the City with the religious purposes of Judge Ruegemer and the religiously-motivated Ordinance supporters. Summary judgment is inappropriate here.

For these reasons, I conclude the Freethinkers have introduced sufficient evidence to raise questions of fact for a trial, and I respectfully dissent. I would reverse the grant of summary judgment and remand for further proceedings.

_____