# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-2444

_____

| | | |
|---|---|---|
| ACLU Nebraska Foundation; John Doe, | * * * | |
| Plaintiffs - Appellees, | * * | |
| v. | * * | |
| City of Plattsmouth, Nebraska, | * * | |
| Defendant - Appellant, | * | Appeal from the United States |
| -------------------------------------- | * | District Court for the |
| State of Nebraska, | * | District of Nebraska. |
| Amicus on Behalf of Appellant, | * * | |
| Americans United for Separation of Church and State, | * * * | |
| Amicus on Behalf of Appellee, | * * | |
| Foundation for Moral Law, Inc.; Wallbuilders, Inc.; The National Legal Foundation, | * * * * | |
| Amici on Behalf of Appellant. | * | |

_____

Submitted: September 15, 2004
Filed: August 19, 2005

_____

Before LOKEN, Chief Judge, RICHARD SHEPPARD ARNOLD[1], BOWMAN, WOLLMAN, MORRIS SHEPPARD ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON, GRUENDER, and BENTON, Circuit Judges, En Banc.

_____

BOWMAN, Circuit Judge.

The City of Plattsmouth, Nebraska, appeals the District Court's grant of summary judgment in favor of John Doe, a Plattsmouth resident, and the ACLU Nebraska Foundation on their claim that the City's display of a Ten Commandments monument violates the Establishment Clause of the First Amendment. We reverse.

In 1965, the Fraternal Order of Eagles (Eagles) donated to the City of Plattsmouth an approximately five-foot-tall and three-foot-wide granite monument inscribed with a nonsectarian version of the Ten Commandments.[2] Above the text of the Commandments appear two small tablets surrounded by a floral design; an eye within a pyramid—an all-seeing eye similar to that appearing on the back of a dollar bill; and an eagle clutching the American flag. Below the text are two Stars of David; the intertwined Greek letters "chi" and "rho"; and a scroll reading, "PRESENTED TO THE CITY OF PLATTSMOUTH, NEBRASKA BY FRATERNAL ORDER OF EAGLES PLATTSMOUTH AERIE NO. 365 1965." Appellant's Br., Ex. O. The Plattsmouth monument is one of many other Ten Commandments monuments given

_____

[1] The Honorable Richard Sheppard Arnold died on September 23, 2004. This opinion is filed by the remaining judges of the en banc court. See 8th Cir. R. 47E.

[2] The monument lists eleven commands ostensibly to serve as an amalgamation of the Jewish, Protestant, and Catholic versions of the Ten Commandments. See ACLU Nebraska Found. v. City of Plattsmouth, 186 F. Supp. 2d 1024, 1032 n.9 (D. Neb. 2002) (noting that Plattsmouth monument is identical in content to monument at issue in Books v. City of Elkhart, 235 F.3d 292, 294–95 (7th Cir. 2000), cert. denied, 532 U.S. 1058 (2001), in which nonsectarian nature of text is discussed).

by the Eagles to towns, cities, and even states in the 1950s and 1960s.[3] The Eagles is a national social, civic, and patriotic organization. Its local chapter has been responsible for many philanthropic and community-enhancing contributions to the City of Plattsmouth.

The monument was erected in a corner of Plattsmouth's forty-five-acre Memorial Park, ten blocks distant from Plattsmouth City Hall. Then Street Commissioner Art Hellwig, an Eagles officer at the time, and other City employees helped erect the monument, although it is not known whether these City employees were acting in their personal or official capacities. The monument is located two hundred yards away from the park's public parking lot, and there are no roads or walkways from the parking lot to the monument. The words of the monument face away from the park, away from any recreational equipment, picnic tables, benches, or shelters. Although the inscribed side of the monument faces the road, it is too far away to be read by passing motorists. The City of Plattsmouth performs no regular maintenance on the monument, but if repairs are required, City employees perform those duties. In addition to the monument, the park contains, among other items, recreational equipment, picnic tables and shelters, and a baseball diamond. Certain individual items located in the park, such as grills, benches, and picnic shelters, bear plaques identifying their donors. In addition, a large plaque inscribed with the names of all donors to Memorial Park is located near the park's entrance. Because no contemporaneous City records exist, there is little evidence in the record regarding the process by which the monument was accepted and installed.

---

[3]Although the history of the Eagles's Ten Commandments project—an attempt to provide youths with a common code of conduct to govern their actions—is recounted in detail in other cases, see, e.g., Books, 235 F.3d at 294–95; State v. Freedom From Religion Found., Inc., 898 P.2d 1013, 1017 (Colo. 1995), cert. denied, 516 U.S. 1111 (1996); as well as by Justice Stevens in his dissent in Van Orden v. Perry, 125 S. Ct. 2854, 2877–78 (2005) (Stevens, J., dissenting), these facts were not submitted by the parties in this case.

In 2001, more than thirty-five years after the monument was installed, Doe and the ACLU sued the City of Plattsmouth, claiming that the Ten Commandments monument interfered with Doe's use of Memorial Park and caused him to modify his travel routes and other behavior to avoid unwanted contact with the monument. According to Doe and the ACLU, the City's display of the monument in Memorial Park is a violation of the Establishment Clause. The District Court granted summary judgment in favor of the plaintiffs, finding that both Doe and the ACLU have standing to bring suit and that the City's display of the monument violates the Establishment Clause.

On appeal, a divided panel of this Court affirmed. ACLU Nebraska Found. v. City of Plattsmouth, 358 F.3d 1020 (8th Cir. 2004), vacated and rehearing en banc granted, April 6, 2004. After agreeing with the District Court that both Doe and the ACLU have standing to pursue this action, the opinion of the Court concluded that (1) Plattsmouth's display of the monument violates the Establishment Clause because the City's purpose in installing or maintaining the monument was solely religious and (2) the display's primary effect was an impermissible endorsement of religion. Id. at 1026-31.

We granted Plattsmouth's petition for rehearing en banc to review the District Court's determination that the City's display of the monument violates the Establishment Clause.[4] With the benefit of the United States Supreme Court's recent decision in Van Orden v. Perry, 125 S. Ct. 2854 (2005), we now reverse.

---

[4] Standing was not raised in the City of Plattsmouth's petition for rehearing en banc, nor was it addressed at oral argument. Our three-judge panel's affirmance of the District Court's ruling that Doe and the ACLU have standing to bring this action was unanimous. Because we have an independent duty to make sure that we have jurisdiction over the case, we have studied the question and now affirm the District Court's conclusion that Doe and the ACLU have standing, adopting the reasoning of the panel opinion on this point. See ACLU Nebraska Found., 358 F.3d at 1026–31.

When we consider a district court's grant of summary judgment, we review findings of fact for clear error and conclusions of law de novo. Royer ex rel. Royer v. City of Oak Grove, 374 F.3d 685, 687 (8th Cir. 2004). We view the facts in the light most favorable to the nonmoving party—in this case the City—and give that party the benefit of all reasonable inferences that may be drawn from the facts. Morgan v. United Parcel Serv. of Am., Inc., 380 F.3d 459, 463 (8th Cir. 2004), cert. denied, 125 S. Ct. 1933 (2005).

The Establishment Clause of the First Amendment prohibits government from making any law "respecting an establishment of religion." U.S. Const. amend. I. This prohibition applies to the states through the Fourteenth Amendment. Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). Using the test described by the Supreme Court in Lemon v. Kurtzman, 403 U.S. 602 (1971), the District Court held that the presence of the monument in a City park violates the Establishment Clause.[5] In Lemon, the Supreme Court announced a three-part test for analyzing whether government activity results in a prohibited establishment of religion. Under the Lemon test, government practice is permissible for purposes of Establishment Clause analysis only if (1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion. Id., 403 U.S. at 612–13 (citations omitted); Children's Healthcare is a Legal Duty, Inc. v. Min De Parle, 212 F.3d 1084, 1093 (8th Cir. 2000), cert. denied, 532 U.S. 957 (2001).

After the Court en banc heard argument in the present case, the United States Supreme Court weighed in on the constitutionality of certain government displays of the Ten Commandments. See Van Orden, 125 S. Ct. 2854; McCreary County v.

---

[5]The opinion of the panel in this case rejected the appellees' argument that the strict scrutiny test described in Larson v. Valente, 456 U.S. 228, 246 (1982), should apply here. We also, for the reasons stated in the panel opinion, ACLU Nebraska Found., 358 F.3d at 1032–34, reject that argument.

ACLU, 125 S. Ct. 2722 (2005). In Van Orden, the Court held that the State of Texas did not violate the Establishment Clause when it accepted a Ten Commandments monument from the Eagles (a monument virtually identical to that at issue in this case) and installed the monument on the grounds of the Texas State Capitol. The Ten Commandments monument, along with the other monuments and historical markers, stands on the twenty-two acres surrounding the Texas State Capitol to "commemorat[e] the 'people, ideals, and events that compose Texan identity.'" Van Orden, 125 S. Ct. at 2858 (citing Tex. H. Con. Res. 38, 77th Leg. (2001)). In his plurality opinion finding no Establishment Clause violation, Chief Justice Rehnquist (joined by Justices Scalia, Kennedy, and Thomas) acknowledged that the test announced in Lemon occasionally has governed the analysis of Establishment Clause cases over the past twenty-five years, but noted that "the factors identified in Lemon serve as 'no more than helpful signposts'" in Establishment Clause analysis. Id. at 2861 (quoting Hunt v. McNair, 413 U.S. 734, 741 (1973)). The Chief Justice went on to cite recent cases in which the Supreme Court did not apply the Lemon test. See, e.g., Zelman v. Simmons-Harris, 536 U.S. 639 (2002); Good News Club v. Milford Cent. Sch., 533 U.S. 98 (2001). Chief Justice Rehnquist ultimately concluded that the Lemon test was "not useful in dealing with the sort of passive monument that Texas has erected on its Capitol grounds." Van Orden, 125 S. Ct. at 2861. Instead, he declared that Establishment Clause analysis in these circumstances was "driven both by the nature of the monument and by our Nation's history." Id. Explicitly recognizing the religious nature and significance of the Ten Commandments, id. at 2863, the Chief Justice distinguished the "passive use" of the Ten Commandments text by the State of Texas from the impermissible use of the text by the State of Kentucky, where copies of the text hung in public-school classrooms and "confronted elementary school students every day," id. at 2864 (distinguishing Stone v. Graham, 449 U.S. 39 (1980)). After discussing in some detail our Nation's history insofar as the use of the Ten Commandments and other religious symbols are concerned, id. at 2859–63, Chief Justice Rehnquist—with a fifth vote from Justice Breyer concurring in the judgment—concluded that the State of Texas did not violate the Establishment

Clause by its display of the Ten Commandments monument on its Capitol grounds, id. at 2864.

In his opinion concurring in the judgment in Van Orden, Justice Breyer agreed that the text of the Ten Commandments communicates an undeniably religious message, but cautioned, as did Chief Justice Rehnquist, see id. at 2863, that focusing on the religious nature of the message alone cannot resolve an Establishment Clause case. Rather, consideration must be given to the context in which the Ten Commandments' text is used. According to Justice Breyer, the State of Texas included the Ten Commandments monument in its Capitol grounds display to communicate both a secular and a religious message. He concluded, however, that the "circumstances surrounding the display's placement on the capitol grounds and its physical setting suggest that the State" intended the secular aspects of the monument's message to predominate, despite the monument's inherently religious content. Id. at 2870 (Breyer, J., concurring in judgment). Finally, the Ten Commandments monument had stood on the Texas State Capitol grounds for forty years without legal challenge. In Justice Breyer's view, "those 40 years suggest more strongly than can any set of formulaic tests that few individuals . . . are likely to have understood the monument as amounting, in any significantly detrimental way, to a government effort" to promote, endorse, or favor religion. Id.

The Supreme Court's decision in Van Orden governs our resolution of this case. Like the Ten Commandments monument at issue in Van Orden, the Plattsmouth monument makes passive—and permissible—use of the text of the Ten Commandments to acknowledge the role of religion in our Nation's heritage. Similar references to and representations of the Ten Commandments on government property are replete throughout our country. Buildings housing the Library of Congress, the National Archives, the Department of Justice, the Court of Appeals and District Court for the District of Columbia, and the United States House of Representatives all include depictions of the Ten Commandments. See id. at 2862–63 & n.9 (listing

-7-

additional examples of government buildings and monuments reflecting the prominent role religion has played in our Nation's history). Indeed, in the United States Supreme Court's own Courtroom, a frieze depicts Moses holding tablets that represent the Ten Commandments, and the Ten Commandments decorate the metal gates and doors around the Courtroom. Id. at 2862.[6] In addition, the Supreme Court has acknowledged in its decisions the role of religion in our country's history. See, e.g., Engel v. Vitale, 370 U.S. 421, 434 (1962) (noting that the "history of man is inseparable from the history of religion"); Sch. Dist. of Abington Township v. Schempp, 374 U.S. 203, 212 (1963) (acknowledging that "religion has been closely identified with our history and government"); Lynch v. Donnelly, 465 U.S. 668, 675 (1984) ("Our history is replete with official references to the value and invocation of Divine guidance . . . ."); Elk Grove Unified Sch. Dist. v. Newdow, 124 S. Ct. 2301, 2317 (2004) (Rehnquist, C.J., concurring in judgment) (recognizing that "patriotic invocations of God and official acknowledgments of religion's role in our Nation's history abound"). Moreover, the Court has approved certain government activity that directly or indirectly recognizes the role of religion in our national life. See, e.g., Zelman, 536 U.S. at 662–63 (upholding school voucher program); Good News Club, 533 U.S. at 120 (permitting religious school groups' use of public school facilities); Agostini v. Felton, 521 U.S. 203, 209 (1997) (allowing public employees to teach at religious schools); Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 845–46 (1995) (permitting disbursement of funds from student activity fees to religious organizations); Lynch, 465 U.S. at 687 (upholding Christmas display including a creche); Marsh v. Chambers, 463 U.S. 783, 792 (1983) (upholding legislative prayer); Mueller v. Allen, 463 U.S. 388, 391 (1983) (allowing tax deduction for certain religious school expenses). Given this "rich American tradition of religious acknowledgments," Van Orden, 125 S. Ct. at 2863, we cannot conclude

---

[6]See also Eugene F. Hemrick, One Nation Under God: Religious Symbols, Quotes, and Images in Our Nation's Capital (Our Sunday Visitor Publishing Division 2001).

that the City's display of a Ten Commandments monument violates the Establishment Clause—particularly in light of the Supreme Court's decision in Van Orden.[7]

We are required neither to "abdicate our responsibility to maintain a division between church and state nor evince a hostility to religion by disabling the government from in some ways recognizing our religious heritage." Id. at 2859. Given the "unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789," id. at 2861 (quoting Lynch, 465 U.S. at 674), and the Supreme Court's "[r]ecognition of the role of God in our Nation's heritage," id., we believe that, like the Ten Commandments monument in Van Orden, the City's monument has "a dual significance, partaking of both religion and government," id. at 2864. Like the monument at issue in Van Orden, the Ten Commandments monument installed in Memorial Park by the City of Plattsmouth is a passive acknowledgment of the roles of God and religion in our Nation's history. Moreover, as was the case in Van Orden, decades passed during which the Ten Commandments monument stood in Plattsmouth's Memorial Park without objection. See id. at 2864 (Rehnquist, C.J.), 2870 (Breyer, J., concurring in

_____

[7]The monument in Van Orden on the Texas State Capitol grounds is situated between the Capitol and the State Supreme Court. Based on the Appendix to Justice Breyer's concurring opinion, the monument appears to be within fifty yards or so of both of those buildings. In contrast, the Plattsmouth monument is located in a relatively isolated corner of Memorial Park, more than ten blocks distant from Plattsmouth City Hall and, as far as the record shows, not close to any other building that is part of City government. This fact provides further support for our conclusion that Van Orden effectively protects the Plattsmouth monument from successful attack under the Establishment Clause. In addition, this fact tends to offset any inference adverse to the City arising from the Plattsmouth monument's being, as far as we know, the only monument in the forty-five-acre City park, whereas the twenty-two-acre grounds of the Texas State Capitol are well-populated by other monuments of various kinds. We note the record in the present case does not contain anything that would suggest the City of Plattsmouth ever has turned down any monument that was offered to it.

judgment). Although the text of the Ten Commandments has undeniable religious significance, "[s]imply having religious content or promoting a message consistent with a religious doctrine does not run afoul of the Establishment Clause." Id. at 2863; see Lynch, 465 U.S. at 680, 687; Marsh, 463 U.S. at 792; McGowan v. Maryland, 366 U.S. 420, 445 (1961); Walz v. Tax Comm'n of New York, 397 U.S. 664, 678 (1970). While there are limits to government displays of religious messages or symbols, a fact well-illustrated by Van Orden's companion case, McCreary County, 125 S. Ct. 2722, we cannot conclude that Plattsmouth's display of a Ten Commandments monument is different in any constitutionally significant way from Texas's display of a similar monument in Van Orden.[8]

The judgment of the District Court is reversed.

BYE, Circuit Judge, with whom MORRIS SHEPPARD ARNOLD, Circuit Judge, joins, dissenting.

The First Amendment's religion clauses stand as a bulwark to protect religion and, most importantly, religious freedom, "mandat[ing] governmental neutrality between religion and religion, and between religion and nonreligion." McCreary County v. ACLU, 125 S. Ct. 2722, 2733 (2005) (quoting Epperson v. Arkansas, 393 U.S. 97, 104 (1968)). "They embody an idea that was once considered radical: Free people are entitled to free and diverse thoughts, which government ought neither to constrain nor to direct." Id. at 2746 (O'Connor, J., concurring). We enforce the clauses out of "respect for religion's special role in society," id., recognizing "the

---

[8]Taking our cue from Chief Justice Rehnquist's opinion for the Court and Justice Breyer's concurring opinion in Van Orden, we do not apply the Lemon test. But were we to apply the Lemon test, we would conclude, essentially for the reasons set out in the dissent to the panel decision in the present case, ACLU Nebraska Found., 358 F.3d at 1043–50 (Bowman, J., dissenting), that the City's display of the monument passes that test.

relationship between government and religion is one of separation, but not one of mutual hostility and suspicion," <u>Van Orden v. Perry</u>, 125 S. Ct. 2854, 2869 (2005) (Breyer, J., concurring in judgment).  Because this Ten Commandments monument, erected and displayed with the imprimatur of the City of Plattsmouth, abridges these ideals, I respectfully dissent.

The Ten Commandments monument belongs to Plattsmouth.  It is located ten blocks from Plattsmouth's City Hall, in Plattsmouth's Memorial Park, and rests in a tranquil setting under shady trees on a grassy knoll between a recreation area and a road.  Although the inscribed side faces the road, it is too far away to be read by passing motorists.  Pedestrians, picnickers, and others using the park, however, have an unrestricted view of the Ten Commandments as written on the monument.

Nothing in the monument's surrounds suggests its religious message might not be its raison d'etre.  Plaques and nameplates in remembrance of, or in thanks to, various individuals adorn other park items as well as a wall by the main entrance to the park.  Unlike the monument, however, these messages of thanks and recognition do not appear on well-known religious symbols nor are they accompanied by any religious text.  The monument shares its environs with trees and recreational equipment but none of this mise-en-scéne reflects an intent to merely complement an otherwise secular setting by drawing upon one of the Ten Commandments' secular applications.  Rather, the monument's stark religious message stands alone with nothing to suggest a broader historical or secular context.[9]

---

[9]The Eagles' stated purpose in providing this and similar monuments was to "inspire all who pause to view them, with a renewed respect for the law of God, which is our greatest strength against the forces that threaten our way of life."  <u>Van Orden</u>, 125 S. Ct. at 2878 (Stevens, J., dissenting) (citation and quotations omitted).

The majority, relying upon <u>Van Orden</u>, holds the monument "makes passive – and permissible – use of the text of the Ten Commandments to acknowledge the role of religion in our Nation's heritage." Inasmuch as I respect "the strong role played by religion and religious traditions throughout our Nation's history," <u>Van Orden</u>, 125 S. Ct. at 2859 (Rehnquist, C.J., plurality opinion), I remain true to the concomitant principle that when government takes as its own an undeniably religious message, we must thoroughly "examine how the text is *used*," <u>id.</u> at 2869 (Breyer, J., concurring in the judgment) (emphasis in original), "[a]nd that inquiry requires us to consider the context of the display." <u>Id.</u>

In his opinion concurring in the judgment in <u>Van Orden</u>, Justice Breyer recognized, as does the majority, a display of the Ten Commandments can convey a historical message about the relationship between the standards inscribed thereon and our laws. <u>Id.</u> at 2869-70. He concluded this relationship "helps to explain the display of those tablets in dozens of courthouses throughout the Nation, including the Supreme Court of the United States." <u>Id.</u> at 2870. The majority expands upon this principle by identifying other references to and representations of the Ten Commandments on government property, including the Library of Congress, the National Archives, the Department of Justice, the Court of Appeals and District Court for the District of Columbia, and the United States House of Representatives. <u>See also id.</u> at 2862-63 & n.9 (noting additional examples).

Each of these examples, however, is distinguishable from the monument erected in Plattsmouth. Many earlier monuments and inscriptions appeared at a time when we "may not have foreseen the variety of religions for which this Nation would eventually provide a home." <u>McCreary</u>, 125 U.S. at 2747 (O'Connor, J., concurring). Indeed, "for nearly a century after the Founding, many accepted the idea that America was not just a *religious* nation, but 'a Christian nation,'" <u>Van Orden</u>, 125 S. Ct. at 2886 (Stevens, J., dissenting) (citing <u>Church of Holy Trinity v. United States</u>, 143 U.S. 457, 471 (1892)) (emphasis in original), and "many of the Framers understood

-12-

the word 'religion' in the Establishment Clause to encompass only the various sects of Christianity," id. at 2885. In today's pluralistic America we no longer accept nor countenance such a narrow reading of the Establishment Clause.

The majorities' examples of displays and inscriptions are further distinguishable because of the clear historical context in which they appear. For example, the oft noted image of Moses holding two tablets, depicted on the frieze in the Supreme Court's courtroom, appears in the company of seventeen other lawgivers, both religious and secular. McCreary, 125 S. Ct. at 2741. Similarly, the depiction of Moses and the Ten Commandments on the Court's east pediment also finds him in the company of renowned secular figures. Id. at 2741 n.23. Such longstanding displays of the Ten Commandments in courtrooms and public buildings harken back to a time when the overwhelming majority of Americans espoused a Christian belief, and now serve as a historical reminder of those times and the relationship between the Decalogue and our laws. The religious message announced by these depictions is undeniable, but their long history and proximity to secular institutions founded upon many of the same basic principles, places them in a historical context not apparent to those viewing Plattsmouth's display. Instead, the Plattsmouth monument stands alone with nothing to recommend it but its religious message.

Texas's display of its Ten Commandments monument, while much like Plattsmouth's monument, is surrounded by seventeen additional monuments and twenty-one historical markers "commemorating the 'people, ideals, and events that compose Texan identity.'" Van Orden, 125 S. Ct. at 2858 (Rehnquist, C.J., plurality opinion) (citation omitted). Conversely, Plattsmouth's monument rests alone among the park's trees and recreational equipment in an area well-suited for reflection and meditation. See id. at 2870 (Breyer, J., concurring in judgment) (noting Texas's monument was located in a setting poorly suited for meditation). Its location among donated park equipment and various plaques and nameplates does nothing to mute its undeniably religious message in favor of the secular and historical messages

-13-

described by Justice Breyer. Id. at 2869-70. Indeed, though not mentioned by the majority, Plattsmouth expressly disavows any claim "that it displays the monument in order to show the secular role and influence of the Ten Commandments." Appellant's Br. at 6. Accordingly, there is nothing reflected in the context of this monument to suggest Plattsmouth intended a secular or historical message to predominate. See id. at 2870.

The majority eschews this distinction, suggesting the monument's location, ten blocks from City Hall, obviates the need to contextualize its religious message. This goes well beyond the reasoning advanced in Van Orden's fractured decision. At most, Van Orden holds a Ten Commandments display, incorporated into a larger display of thirty-eight monuments and historical markers, will survive constitutional attack because it reflects a broad range of secular and religious ideals. Van Orden did not extend constitutional protection to Ten Commandments displays with no secular or historical message.

Nor did Van Orden reduce Establishment Clause jurisprudence to a simple mathematical calculation. It is not enough that Plattsmouth's monument has stood for more than thirty-five years in Memorial Park. Without the contextualizing presence of other messages or some indicia of historical significance, there is nothing to free the display from its singular purpose of advancing its religious message. Because no such broader application is apparent – or for that matter offered – the monument violates the Establishment Clause.

For the foregoing reasons, I reject the majorities' conclusion the monument stands simply "to acknowledge the role of religion in our Nation's heritage." The monument does much more than acknowledge religion; it is a command from the Judeo-Christian God on how he requires his followers to live. To say a monument inscribed with the Ten Commandments and various religious and patriotic symbols

-14-

is nothing more than an "acknowledgment of the role of religion" diminishes their sanctity to believers and belies the words themselves.  I respectfully dissent.

_____