# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3214

_____

Red River Freethinkers,       *

           *

      Appellant,       *

           *    Appeal from the United States

    v.           *    District Court for the

           *    District of North Dakota.

City of Fargo,         *

           *

      Appellee.        *

_____

Submitted: May 12, 2011
Filed: May 25, 2012

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Government displays of the Ten Commandments sometimes will violate the Establishment Clause of the First Amendment, see McCreary Cnty., Ky. v. ACLU of Ky., 545 U.S. 844 (2005), other times they will not, see Van Orden v. Perry, 545 U.S. 577 (2005).

This appeal presents the question whether a city commission's adoption of an initiated ordinance that in effect countermanded the commission's earlier decision to remove from municipal property a Ten Commandments monument imbued the monument with an impermissible religious symbolism that had earlier been judicially declared not to exist. The district court dismissed the complaint, holding that Red

River Freethinkers (Freethinkers) lacked standing to maintain its First Amendment Establishment Clause action. We reverse and remand for further proceedings.

I.

Background

On March 8, 1958, the Fraternal Order of Eagles—a non-religious civic organization—donated a Ten Commandments monument to the City of Fargo (City). See Twombly v. City of Fargo, 388 F. Supp. 2d 983, 984 (2005).[1] In 1961, the monument was installed in its current location, "a grassy, open area mall" on City property. Id. at 985. There it sat without legal challenge for forty years.

Then, in 2002, a group of City residents, all of them members of Freethinkers—a non-profit corporation dedicated to the promotion of atheistic and agnostic views of the supernatural—sued the City in the United States District Court for the District of North Dakota. See id. at 986. They sought (1) a declaration that the City's display of the Ten Commandments monument violated the Establishment Clause and (2) an order that the monument be removed from the mall.

Both sides stipulated to the relevant facts and moved for summary judgment. The district court noted that the City's monument was "virtually identical" to the "passive monuments" at issue in Van Orden, 545 U.S. 677, and ACLU Nebraska Foundation v. City of Plattsmouth, Nebraska, 419 F.3d 772 (8th Cir. 2005) (en banc), both of which survived Establishment Clause scrutiny. It further observed that neither the plurality in Van Orden, nor our court in City of Plattsmouth, found the "sometimes . . . governing test" articulated in Lemon v. Kurtzman, 403 U.S. 602 (1971), "useful

_____

[1]For a more complete description of the monument and its placement see Twombly, 388 F. Supp. 2d at 984-86. We recite only those facts necessary to our disposition.

-2-

in dealing with the[se] sort[s] of passive monuments." Van Orden, 545 U.S. at 685-86; see City of Plattsmouth, 419 F.3d at 778 n.8. It therefore conducted "a contextual inquiry," examining the "circumstances surrounding" the monument's placement on City property and "the 'physical setting' of the monument." Twombly, 388 F. Supp. 2d at 988-89 (quoting Van Orden, 545 U.S. at 701 (Breyer, J., concurring)).

The district court acknowledged that the City's monument "is neither far removed from governmental buildings, nor is it surrounded by a collection of secular monuments." Id. at 990-91; cf. Van Orden, 545 U.S. at 681; City of Plattsmouth, 419 F.3d at 777 n.7. But it nevertheless concluded that "a reasonable observer could not perceive the city as adopting or endorsing the religious message of the display" given (1) that the monument "originated from a private organization and was erected for a secular purpose, to celebrate the first urban renewal project in North Dakota history," Twombly, 388 F. Supp. 2d at 993, (2) that the monument contained an inscription describing "not only the [private] origin of the monument's creation, but also a message from the Eagles describing the [secular] purpose of the display," id. at 991, (3) "that the public would perceive the mall as a public forum," where the expression of religious opinions would be "less likely to be seen as the exclusive dominion of the state," id. at 992, and (4) the "extreme dearth of community complaints and the complete absence of legal challenges over the monument[']s near fifty year history," id. at 993. It therefore denied the plaintiffs' motion for summary judgment, granted the City's motion, and dismissed the action.

The plaintiffs did not appeal from the decision, but instead adopted a new strategy. Pointing out that the district court in Twombly had theorized that "to exclude the request of a private organization, such as the Fraternal Order of Eagles, to engage in religious speech in a recognized forum on the sole grounds that their speech has religious content could arguably be a violation of their constitutional rights," id. at 992, Freethinkers offered their own monument to the City, with a

request that it be placed near the Ten Commandments monument.  The proposed monument was to be inscribed:

> THE GOVERNMENT OF THE UNITED STATES OF AMERICA IS NOT, IN ANY SENSE FOUNDED ON THE CHRISTIAN RELIGION
>
> FROM THE TREATY OF TRIPOLI, APPROVED UNANIMOUSLY BY THE UNITED STATES SENATE, JUNE 7, 1797.  SIGNED BY PRESIDENT JOHN ADAMS
>
> PRESENTED TO THE CITY OF FARGO BY THE RED RIVER FREETHINKERS IN RECOGNITION OF THE FIRST AMENDMENT RIGHT OF EVERY AMERICAN TO BELIEVE, OR NOT BELIEVE, IN ANY GOD

See Compl. ¶¶ 12-13.

Freethinkers hoped that its "sister" monument would "downplay the Christian message of the 10 Commandments monument."  Appellant's Summ. of the Case.

The City Commission referred Freethinkers's proposal to City Attorney Erik Johnson for consideration and a recommendation.  Johnson noted that the Twombly litigation "complicate[d] the current offer," and therefore proposed that Freethinkers meet with him "to talk about [its] goals and wishes," so that the request could be "handled properly."  Appellant's App. at 38.  At that meeting Freethinkers indicated that it "prefer[red] that [its] offer to donate the monument be accepted," but that if the City "decide[d] to remove the Ten Commandments to a private location," then the sister monument would "not be needed."  Id. at 51.

At the next Commission meeting, Johnson presented the Commission with four options:  (1) "Decline [] Freethinkers'[s] offer and leave the Ten Commandments monument where it is"; (2) "Decline [] Freethinkers'[s] offer and move the Ten Commandments monument"; (3) "Accept [] Freethinkers'[s] offer and allow [its]

-4-

monument to be installed"; or (4) "Establish a Committee to Create 'Diversity' or 'freedom' displays." Id. Johnson advised that "from a purely legal standpoint, the option with the least risk and greatest potential for cost-avoidance would be" option two. Id.

The Commission also heard the views of a number of citizens. One explained why he thought the City could decline Freethinkers's offer and retain the Ten Commandments monument without offending the Establishment Clause. See id. at 51-52. Another "urged the Commissioners not to give into [sic] the Freethinkers' agenda to rewrite American history." Id. at 52. Two others offered religious justifications for keeping the Ten Commandments monument: One "hope[d] the Commission [would have] the strength and courage to support the Lord," while the other stated that "the Ten Commandments is pretty sacred and there are very few people who would not agree with that," adding that the "issue should be put to a vote of the people." Id. One spoke in favor of Freethinkers's offer. Commissioner Linda Coates then observed that "she ha[d] heard a very mixed message from the people who have spoken. She said there are many Fargoans of other faiths and it is not the role of government to proclaim one religion above the others." Id.

The Commission then voted unanimously to reject Freethinkers's offer and, by a vote of 3-to-2, further decided to donate the Ten Commandments monument to a private entity. It planned "to receive proposals for relocation of the monument for a period of 14 days" and to "make its determination of which proposal to accept at its July 16, 2007 meeting." Id.

Public reaction to the City's decision to donate the Ten Commandments monument was mixed. Of those in favor of the decision to move the monument, some cited principles, see, e.g., id. at 66 ("[T]he City Commission's decision to move the monument should be upheld because of separation of church and state and to protect the first amendment.") ("[T]he monument is not critical to one's faith."), while others

offered practicality, see, e.g., id. ("[I]t is irresponsible to hold taxpayers at risk of possible litigation.") ("[T]he City should focus on more pressing social needs.").

There were a great many people, however, who wanted the monument to stay. Several of them organized and circulated a petition to change the City's municipal code to provide that

> A marker or monument on City of Fargo property for 40 or more years may not be removed from its location on City of Fargo property.

Id. at 71.[2] The petition, which garnered 5,265 signatures in short order, also asked the City not to remove any such monuments "until this initiated ordinance is adopted by the Board of Commissioners of the City of Fargo or until there is a vote of the people on this initiated ordinance." Id.

On July 2, 2007, at the next Commission meeting, the Commission deemed the petition received and placed it on "first reading."[3] It then heard the views of several citizens who were in favor of the proposed ordinance. Like those who wanted the monument removed, their reasons were varied. See, e.g., id. at 66 ("[T]he City Commission has received petitions in the past . . . and the Commission disregarded the people's wishes. . . . [T]he point of a petition is about freedom, not about a monument.") ("[T]his is a democracy and the majority have spoken to have it remain.") ("[T]he monument has been at its current location for a long time.").

---

[2]The Ten Commandments monument was the only monument on City property to which the proposed ordinance applied. Report & Recommendation of Aug. 16, 2010 (Report & Recomm.), at 4, adopted by D. Ct. Order of Sept. 8, 2010.

[3]The Fargo Municipal Code provides: "All [proposed] ordinances shall be read twice and the second reading shall not be had in less than one week after the first reading." Fargo Mun. Code § 1-0203.

Several Commissioners then shared their views. Coates, noting that "the tone of [the] debate [had] been anguished," said that "it [was] obvious the monument means a great deal to the people of Fargo," but that it was "important . . . not to support one group over another." Id. at 67. "She suggested creating a policy which would avoid legal challenges with future requests." Id. Commissioner Mike Williams agreed that "it would be good to review the process for submissions of additional monuments," but added that "he respect[ed] the right of the citizens to petition and support[ed] the issue being put on the ballot." Id. Commissioner Tim Mahoney agreed with Williams that the "Commission should do the will of the people . . . and accept the [proposed] ordinance," observing that "it is important to embrace and be tolerant of all people." Id.

The Commission then reconsidered and, by a vote of 3-to-2, reversed its earlier decision to donate the monument. It also tabled a renewed request by Freethinkers to accept the sister monument in order to give the City time to "develop a policy in dealing with requests for placement of monuments on City property." Id. at 68. The proposed ordinance was placed on "second reading" on July 16, 2007. Id. at 104.

On July 30, 2007, the Commission adopted the proposed ordinance by unanimous vote. Id. at 118; see Fargo Mun. Code § 18-0514. Freethinkers again renewed its request that its sister monument be accepted, but the City again voted to table the offer until the policy regarding the acceptance of future monuments had been "refine[d]." Appellant's App. at 119-20. Finally, on August 27, 2007, the Commission, by a vote of 3-to-2, adopted "a policy of not accepting additional monuments to be placed on the Civic Plaza." Id. at 141-42.

Freethinkers filed this lawsuit on behalf of its members in April 2008, asserting that the City's adoption of the proposed ordinance and its refusal to accept the sister

monument violated the Establishment Clause of the First Amendment.[4]  It seeks:  (1) a declaration that Fargo's initiated ordinance, now codified as § 18-0514 of the Fargo Municipal Code, is unconstitutional; (2) an order requiring the City to remove the Ten Commandments monument from City property; (3) monetary damages for the funds it has expended "to obtain redress of grievances"; and (4) attorney's fees.  The district court referred the case to a magistrate judge.

The City moved to dismiss for lack of jurisdiction, arguing that Freethinkers lacked standing.  Because the City had submitted materials outside the pleadings, the magistrate judge converted the City's motion to one for summary judgment, see Fed. R. Civ. P. 12(d), and permitted Freethinkers to submit its own materials, which it did.

The magistrate judge began her analysis by observing that Freethinkers "cannot simply challenge the City's display of the monument on Establishment Clause grounds."  Report & Recomm., at 8.  "Such a claim," she reasoned, "would merely reprise the *Twombly* case," which Freethinkers "is precluded [from doing] by principles of res judicata and collateral estoppel."  Id.[5]  She noted that Freethinkers "appeared to recognize" this.  Id. at 8.

The magistrate judge then turned to Freethinkers's claim:  That the City's actions post-Twombly had given rise to a new injury—the magnification of its "members' sense of exclusion and anger"—which "was caused by the continued

_____

[4]Freethinkers initially asserted that the City's actions also violated the Free Speech Clause of the First Amendment.  Following the Supreme Court's decision in Pleasant Grove City, Utah v. Summum, 555 U.S. 460 (2009), however, Freethinkers dropped this claim.

[5]Although Freethinkers was not itself a party in Twombly, the magistrate judge noted that Freethinkers's interests are identical to those of the Twombly plaintiffs and that those plaintiffs were all members of Freethinkers.  Freethinkers has not disputed that it is precluded from relitigating issues decided in Twombly.

presence of the Ten Commandments monument," "the City's adoption of the initiated ordinance," and "the process by which the ordinance was enacted." Id. at 9.

As the magistrate judge saw it, the theory of Freethinkers's case was that

the proponents of the initiated ordinance petition drive were motivated by a religious purpose, and that the City, in adopting the ordinance as well as in changing its mind about moving the Ten Commandments monument to private property, approved of and embraced those religious motivations, thereby converting the Ten Commandment's monument from a partially secular, permissible display to a solely religious, impermissible display.

Id. at 10.

Although the magistrate judge apparently agreed that this claim raised an issue different from the one decided in Twombly, she found "no evidentiary support for Freethinkers'[s] conclusory allegation that the City Commission engaged in impermissibly religious expression," and therefore concluded that Freethinkers had "failed to establish the second element of standing." Id. at 14. She noted that "[n]o evidence of the *City's* intent is alleged; only the petition proponents' religious intentions are alleged," and further noted that "[t]he complaint treats all proponents of the petition for initiated ordinance and the City Commissioners as monolithic in holding and expressing a religious viewpoint." Id. at 10-11. In her view, "[s]uch a conclusory inference cannot provide the causation element of standing to assert an Establishment Clause claim against the City." Id. at 11.

Moreover, the magistrate judge concluded, Freethinkers could not establish the third element of standing, redressability, because the only order that would remedy its members' feelings of "exclusion and anger" was one directing the removal of the Ten Commandments monument. This, she reasoned, was not "available" because "[a]n

action to force removal of the monument reprises the <u>Twombly</u> case, which [Freethinkers] is barred from doing." <u>Id.</u> at 15.

The magistrate judge therefore recommended that the case be dismissed for lack of standing. As set forth above, the district court dismissed the action. In its order adopting the magistrate judge's report and recommendation, the district court made the "further find[ing] that to the extent <u>Twombly</u> is not controlling, . . . the United States Supreme Court's decision in <u>Pleasant Grove City, Utah v. Summum</u> is decisive." D. Ct. Order of Sept. 8, 2010 (citation omitted).

We assess Freethinkers's standing *de novo*.[6] We accept Freethinkers's well-pleaded facts as true, recognizing that Freethinkers "may not rest on mere denials or allegations, but must [have] instead set forth specific facts sufficient" to demonstrate its standing. <u>Rau v. Roberts</u>, 640 F.3d 324, 327 (2011).

## II.

### Standing

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984) (quoting U.S. Const. art. III, § 2, cl. 1). "As an incident to the elaboration of this bedrock requirement, [the Supreme Court] has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." <u>Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 471 (1982).

---

[6]Although Freethinkers was at one point asserting taxpayer standing, <u>see</u> <u>Flast v. Cohen</u>, 392 U.S. 83 (1986), it appears to have abandoned this theory below, Report & Recomm., at 7 n.2, and counsel for Freethinkers disclaimed it during oral argument.

An association such as Freethinkers "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 553 (1996) (quoting Hunt v. Wash. State Adver. Comm'n, 432 U.S. 333, 343 (1977)).

The City offers no argument that "the interests [Freethinkers] seeks to protect" are not "germane" to its purpose or that Freethinkers's requested relief "requires the participation of [its] individual members." See id. Moreover, we are satisfied that Freethinkers meets these latter two requirements. Freethinkers is dedicated to the promotion of atheistic and agnostic views of the supernatural. It has members living in or near the City. Compl. ¶ 4. Its purpose of promoting atheistic and agnostic views is plainly germane to its members' interest in being free of Establishment Clause violations. Furthermore, the primary relief Freethinkers seeks—removal of the monument—"does not make the individual participation of each injured party indispensable to proper resolution of the cause." Warth v. Seldin, 422 U.S. 490, 511 (1975) ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." Id. at 515).

We are therefore left with the question whether Freethinkers's "members would otherwise have standing to sue in their own right." United Food & Commercial Workers Union Local 751, 517 U.S. at 553. To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen, 468 U.S. at 751. The standing inquiry

requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?

Id. at 752. The standing inquiry is not, however, an assessment of the merits of a plaintiff's claim. See ASARCO Inc. v. Kadish, 490 U.S. 605, 624 (1989) ("[A]lthough federal standing 'often turns on the nature and source of the claim asserted,' it 'in no way depends on the merits of the [claim].'" (alteration in original) (quoting Warth, 422 U.S. at 500)). With that in mind, we consider each element—injury, causation, and redressability—in turn.

## A. Injury

Freethinkers alleges that in light of the City's actions post-Twombly, the Ten Commandments monument now violates the Establishment Clause. It further alleges that its members "have come into unwanted contact with" the monument "and, as a result, have suffered feelings of exclusion, discomfort, and anger." Compl. ¶ 22. It does not, however, allege that any of its members have "altered [their] behavior to avoid the allegedly unconstitutional display." See ACLU Neb. Found. v. City of Plattsmouth, Neb., 358 F.3d 1020, 1029 (8th Cir. 2004), *rev'd en banc on other grounds*, 419 F.3d 772 (8th Cir. 2005).[7]

In City of Plattsmouth, we acknowledged a split of authority on the injury required to confer standing in so-called "passive-display" cases. See 358 F.3d at 1029. Some courts apply "a more demanding test," which requires "a plaintiff to

_____

[7]Although our en banc court disagreed with the panel opinion's resolution of the merits of the Establishment Clause claim, we agreed with the panel opinion's standing determination and adopted the panel opinion's reasoning on this point.

-12-

prove, at a minimum, he altered his behavior to avoid the allegedly unconstitutional display." Id. But "[b]y far the prevailing view requires only direct and unwelcome personal contact with the alleged establishment of religion." Id. Because the individual plaintiff in City of Plattsmouth met both tests, we did not need to choose between them. Id. at 1030. Here, however, Freethinkers has not alleged that any of its members have altered their behavior to avoid the Ten Commandments monument. Therefore, Freethinkers's members would have standing only if "direct and unwelcome personal contact" with the monument is a sufficient injury. We conclude that it is.

"[A]n invasion of a legally protected interest" is an injury sufficient for the purposes of standing when it is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "By particularized, we mean that the injury must affect the plaintiff in a personal and individual way." Id. at 560 n.1.

The injuries to Freethinkers's members are no doubt actual and imminent. The City's display of the Ten Commandments monument has continued now for fifty years, with no end in sight. Those members have encountered the monument, causing them "to feel isolated and unwelcome in the city." Appellant's App. at 146.

Furthermore, those injuries are personal to Freethinkers's members. Freethinkers does not seek to assert the injuries of out-of-towners who have read about Fargo's display and "disagree" with it. Cf. Valley Forge Christian Coll., 454 U.S. at 485. Freethinkers's members live in and around Fargo. See Compl. ¶ 4; accord Appellant's App. at 147. Its suit "is not the mere vindication of a public grievance, but an allegation of government establishment of religion to which [its members], personally and directly, [have] been subjected." City of Plattsmouth, 358 F.3d at 1029.

Finally, the alleged injuries are concrete. Freethinkers's members "experience[] direct, offensive, and alienating contact with the Ten Commandments monument." Id. at 1030. "That the injuries are caused by [their] own City is all the more alienating." Id. And while those injuries are largely emotional, we must presume they are sincerely felt. To the extent that emotional harms differ from other, more readily quantifiable harms, that difference lacks expression in Article III's case-or-controversy requirement. U.S. Const. art. III, § 2, cl. 1.[8]

Freethinkers has therefore alleged an injury to its members that would be sufficient to support its members' "standing to sue in their own right." See United Food & Commercial Workers Union Local 751, 517 U.S. at 553.

## B. Causation

The alleged injury to Freethinkers's members is more than "fairly traceable to the [City's] allegedly unlawful conduct," see Allen, 468 U.S. at 751; it is a direct consequence of the City's allegedly unlawful conduct. As explained above, the alleged injury is direct and unwelcome contact with an Establishment Clause violation. If the City's Ten Commandments monument now violates the Establishment Clause, then its continued display is the cause of that injury.

_____

[8]We note also that the plaintiff in Van Orden claimed only that his visits to the Texas State Law Library brought him "into frequent, and according to him unwelcome, contact with the [challenged] Ten Commandments monument." Van Orden v. Perry, No. A-01-CA-833-H, 2002 WL 32737462, at *2 (W.D. Tex. Oct. 2, 2002). The District Court for the Western District of Texas concluded that the plaintiff's unwelcome contact with the monument was sufficient injury to confer standing and neither the Fifth Circuit Court of Appeals nor the Supreme Court revisited that determination. Although we recognize that "[w]hen a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed," Ariz. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1448 (2011), we nevertheless observe that no Justice questioned Van Orden's standing.

-14-

Accordingly, Freethinkers has demonstrated that the injury to its members is caused by the "allegedly unlawful conduct." Id.

Nevertheless, the magistrate judge devoted most of her analysis to explaining why Freethinkers had failed to demonstrate causation. In her view, Freethinkers's

> bald assertions that "the adoption of the initiated ordinance has transformed the Ten Commandment's and the City's ownership of the Ten Commandments into a government expression of a religious purpose prohibited by McCreary" . . . and that "the Ten Commandments monument now has an unconstitutional religious purpose," are legal conclusions not entitled to acceptance as truth without supporting factual allegations.

Report & Recomm., at 12 (citations omitted). Then, citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the magistrate judge concluded that "[t]hese bootstrapped allegations are, at best, 'merely consistent with' liability of the city, and the amended complaint 'stops short of the line between possibility and plausibility of entitlement to relief.'" Report & Recomm., at 12.

Both Bell Atlantic Corp. and Iqbal held that the respective plaintiffs had failed to state a claim upon which relief could be granted because they had failed to plead a fact essential to the merits of their causes of action: In Bell Atlantic Corp. it was the existence of an agreement; in Iqbal it was a discriminatory purpose. Applied here, neither of those cases leads to the conclusion that Freethinkers has failed to demonstrate that the injuries to its members are caused by an alleged Establishment Clause violation.

Freethinkers alleged and properly supported certain facts: The City displays a Ten Commandments monument; it has enacted an ordinance prohibiting the removal

of that monument; no other monument is so protected; and the City has a policy of not accepting other monuments in the mall where the Ten Commandments monument stands. Put together, Freethinkers argues, these facts result in an Establishment Clause violation. The claimed injury—direct and unwelcome contact with the monument—is "fairly traceable" to the alleged Establishment Clause violation.

The magistrate judge apparently superimposed an additional standing requirement on Freethinkers—that Freethinkers "plausibly" establish that the City Commission had a religious motivation in enacting the ordinance. The Supreme Court has never held that a plaintiff must plead and prove a religious motivation on the part of the government as a necessary element of an Establishment Clause claim. Rather, the Supreme Court has "repeatedly emphasized [its] unwillingness to be confined to any single test or criterion in this sensitive area," Lynch v. Donnelly, 465 U.S. 668, 679 (1984), and adopted "case-specific examinations of the challenged government action," County of Allegheny v. ACLU Greater Pittsburgh Chapter, 492 U.S. 573, 623 (O'Connor, J., concurring). See also Van Orden, 545 U.S. at 699-700 (Breyer, J., concurring) ("[T]he Court has found no single mechanical formula that can accurately draw the constitutional line in every case. . . . I see no test-related substitute for the exercise of legal judgment."). While such a flexible approach may make it difficult for the lower courts to determine whether a particular display violates the Establishment Clause, it does not follow that passive-display Establishment Clause claims must necessarily be rejected at the pleading stage because plaintiffs do not spell out in detail exactly how its well-pleaded facts operate to result in a violation of the Establishment Clause.

## C. Redressability

Freethinkers's complaint requests (1) a declaration that Fargo's initiated ordinance, now codified as § 18-0514 of the Fargo Municipal Code, is unconstitutional, (2) an order requiring the City to remove the Ten Commandments

monument from City property, (3) monetary damages for the funds it has expended "to obtain a redress of grievances," and (4) attorney's fees.

At oral argument, counsel for Freethinkers was asked whether invalidation of the ordinance would remedy the alleged constitutional violation. He replied that "it's sort of like you can't unring the bell here," although he was "not sure." For our purposes, we will assume, without deciding, that invalidation of the ordinance would not redress the injury to Freethinkers's members, and so we examine whether the remaining requested relief would redress that injury.[9]

Again, the alleged injury is direct and unwelcome personal contact with an Establishment Clause violation. Freethinkers's request for monetary damages and attorney's fees would of course not remedy that injury.

There is no doubt, however, that removal of the monument from public property would remedy the alleged injury. The magistrate judge agreed. See Report & Recomm., at 15 ("Freethinkers'[s] alleged injury, continued unwanted contact with the monument, is not redressed by removal of the ordinance, only by removal of the monument.").

Nevertheless, the magistrate judge concluded that Freethinkers had "failed to show its alleged injury is redressable by the relief the court could grant," since "[a]n

_____

[9]The magistrate judge concluded that invalidation of the ordinance would not redress the alleged injury because the City would still be free to display the monument. See Report & Recomm., at 15. She did not, however, consider whether invalidation of the ordinance would sufficiently eliminate any governmental endorsement of religion resulting from enactment of the ordinance. The ordinance apparently does not impose any additional burden on the City Commission should it desire to transfer the monument to a private entity. According to counsel for the City, repeal of that ordinance could be accomplished by majority vote of the Commission, exactly the same vote as would be required to donate the monument.

action to force removal of the monument reprises the <u>Twombly</u> case, which plaintiff is barred from doing." <u>Id.</u> at 15. We do not agree.

As an initial matter, to the extent Freethinkers is barred by the doctrines of res judicata and collateral estoppel from relitigating issues decided in <u>Twombly</u>, that bar is not jurisdictional. <u>See</u> <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter." (citing Fed. R. Civ. P. 8(c)); Fed. R. Civ. P. 8(c) (listing estoppel and res judicata as affirmative defenses). Had Freethinkers attempted to relitigate an issue decided in <u>Twombly</u>, the district court could have dismissed on that basis, even *sua sponte*, <u>see</u> <u>Arizona v. California</u>, 530 U.S. 392, 412-13 (2000), but not for Freethinkers's lack of standing.

Furthermore, this suit presents an issue that could not have been raised nor decided in <u>Twombly</u>: Whether the City's actions *post*-<u>Twombly</u> transformed the Ten Commandments monument from a permissible display into an impermissible violation of the Establishment Clause. <u>See</u> <u>Brown v. Felson</u>, 442 U.S. 127, 139 n.10 (1979) ("Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit."). Freethinkers could not have brought in <u>Twombly</u> a claim based on the City's actions post-<u>Twombly</u>. Furthermore, the district court in <u>Twombly</u> could not have anticipated the actions that the City might take with respect to the monument following that ruling. The court therefore could not take any of those actions into account when analyzing the "nature of the monument," <u>Van Orden</u>, 545 U.S. at 686, or the "context of [its] display," <u>see</u> <u>id.</u> at 701 (Breyer, J., concurring). Nor could it judge the effects those actions would have on a reasonable observer, "familiar with the history of the government's actions and competent to learn what history has to show." <u>See</u> <u>McCreary Cnty., Ky.</u>, 545 U.S. at 866.

Given the Supreme Court's observations in <u>Pleasant Grove City, Utah v. Summum</u>, 555 U.S. 460 (2009), discussed more fully below, it is plausible that a

-18-

government might, by subsequent action, transform a formerly permissible display into an impermissible one. Likewise, we think that a government might possibly avoid an Establishment Clause violation by encouraging observers to consider a monument's "secular message" or "context [in] history." Van Orden, 545 U.S. at 701-02 (Breyer, J., concurring).

At minimum, such a theory is not "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as to not involve a federal controversy." Oneida Indian Nation v. Oneida Cnty., N.Y., 414 U.S. 661, 666 (1974). So long as Freethinkers presses an "arguable" construction of the Establishment Clause, which it does, and further demonstrates its standing to sue under that construction, which it has, we have jurisdiction to hear its claim. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998).

The City's assertion—that there is "no basis in law" for removal of the monument—is wrong. If the City's monument violates the Establishment Clause, then a court can order its removal. Contrary to what the City apparently believes, and as explained above, the district court in Twombly did not decide that the monument may reside forevermore on City property. It ruled that the monument, as displayed at that time, did not violate the Establishment Clause. If things have changed since that time, and if those changes have resulted in an Establishment Clause violation, then a court can remedy the violation.

The injuries to Freethinkers's members are therefore redressable. Accordingly, Freethinkers has standing to pursue its claim, and the district court erred in dismissing the action for lack of standing.

III.

Disposition

As recounted above, in its order adopting the magistrate judge's report and recommendation, the district court made the "further find[ing] that to the extent Twombly is not controlling, . . . the United States Supreme Court's decision in Pleasant Grove City, Utah v. Summum is decisive." D. Ct. Order at 1. Summum involved a claim under the Free Speech Clause of the First Amendment. The Court held that the placement of a permanent monument in a public park was a form of government speech that is not subject to scrutiny under the Free Speech Clause. Summum, 555 U.S. at 464. The city in that case was therefore not required to accept for placement in a city park a donated monument expressing the donors' views. In so holding, the Court noted that "government speech must comport with the Establishment Clause." Id. at 468. The Court also noted that

> [c]ontrary to respondent's apparent belief, it frequently is not possible to identify a single "message" that is conveyed by an object or structure, and consequently, the thoughts or sentiments expressed by a government entity that accepts and displays such an object may be quite different from those of either its creator or its donor. By accepting a privately donated monument and placing it on city property, a city engages in expressive conduct, but the intended and perceived significance of that conduct may not coincide with the thinking of the monument's donor or creator. Indeed, when a privately donated memorial is funded by many small donations, the donors themselves may differ in their interpretation of the monument's significance. By accepting such a monument, a government entity does not necessarily endorse the specific meaning that any particular donor sees in the monument.

Id. at 476-77 (footnotes omitted).

-20-

As Freethinkers points out, the Court also observed that "[t]he message conveyed by a monument may change over time." Id. at 477.

Because Summum involved a claim under the Free Speech Clause of the First Amendment, the Court was not presented with and did not address any claim under the Establishment Clause. We do not understand the district court's reference to Summum as constituting a ruling on the merits of Freethinkers's Establishment Clause claim. Neither the City nor Freethinkers has briefed the merits of that claim, and we decline to address that issue in the first instance. Accordingly, we conclude that it is necessary to remand the case for a ruling on the claim. See Minn. Fed'n of Teachers v. Randall, 891 F.2d 1354, 1360 (8th Cir. 1989). See also Smith v. Jefferson Cnty. Bd. of Sch. Com'rs, 641 F.3d 197, 215-16 (6th Cir. 2011); Suhre v. Haywood Cnty., 131 F.3d 1083, 1084, 1091-92 (4th Cir. 1997); Doe v. Cnty. of Montgomery, Ill., 41 F.3d 1156, 1162 (7th Cir. 1994); Saladin v. City of Milledgeville, 812 F.2d 687, 693-94 (11th Cir. 1987). Cf. Salazar v. Buono, 130 S. Ct. 1803, 1820-21 (2010).

At oral argument, counsel for Freethinkers stated that the record had not been fully developed prior to the district court's ruling on the standing issue and that further discovery should be conducted. It will be for the district court to determine what further record development proceedings are appropriate on remand.

IV.

Conclusion

The judgment dismissing the action is reversed, and the case is remanded to the district court for further proceedings.

-21-

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's well-developed analysis of the standing issue in this matter. I dissent, however, from the decision to remand this matter to the district court. There is nothing more to be developed pertaining to the motivations of the City Commission in its adoption of the city ordinance, thus I believe it is proper for us to conclude this matter by affirming the decision of the district court. See Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003) (holding district court's judgment may be affirmed on any ground supported by the record).

Twombly determined that the passive display of the Ten Commandments monument did not violate the Establishment Clause. Freethinkers's argument is that by adopting the initiated ordinance, the City Commission perforce adopted as its own the religious views of the ordinance's proponents. While subsequent events could change the nonsectarian nature of such a monument, when viewed in the context of the monument's history and the views expressed by the members of the City Commission, Freethinkers's argument fails.

As the magistrate judge correctly observed, the City Commissioners, as well as the proponents of the now-enacted ordinance, may have had a variety of reasons for wanting to keep the monument in its present location. The motivation actually expressed by the Commissioners was, essentially, that the Commission should do the will of the majority of the people of Fargo, while at the same time respecting the rights of those who do not accept the religious message embodied in the Ten Commandments. There is no evidence that any of the Commissioners themselves expressed a religious motivation.

The Commission's decision-making process was marked by a willingness to consider all competing views concerning the ordinance. Although the tone of the debate had, in Commissioner Coates's words, "been anguished," the record does not

suggest that the members of the Commission demonstrated hostility towards or partiality in favor of any of the several views expressed at the meetings. Indeed, Commissioner Mahoney's observation that "it is important to embrace and be tolerant of all people" reflected the attitude of openness and receptivity to competing views that the members of the Commission manifested throughout their consideration of the matter, including their recognition of the need to consider the views of the majority. Thus, in contrast to the situation that existed in McCreary County, where the religious objectives of those who mounted the objected-to displays were clear, see 545 U.S. at 850-54, the members of the Commission in this case expressly recognized the views of those who were opposed to the continued presence of the monument at its current site. In further contrast to the situation in McCreary County, there was no ostensible indication by the Commissioners of a purpose to promote a particular faith, and thus nothing to cause an observer to understand that the City was taking sides. See id. at 866, n.14.

The situation in the case before us likewise stands in sharp contrast to that which existed in American Atheists, Inc. v. Davenport, 637 F.3d 1095 (10th Cir. 2010) (en banc), cert. denied, 132 S. Ct. 12 (2011). There, the memorial crosses erected by the Utah Highway Patrol were found to "conspicuously bear[] the imprimatur of a state entity." Id. at 1121.

"[W]hen the reasonable observer would view a government practice as endorsing religion, . . . it is our duty to hold the practice invalid." Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 777 (1995) (O'Connor, J., concurring) (emphasis omitted). "[T]he reasonable observer in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious display appears." Id. at 780.

The Commission's actions took place in the context of a long-established monument, one that had been judicially determined not to convey any Establishment

Clause message. The Commission's initial decision to move the existing monument from its long-standing site can best be understood as an exercise in pragmatism—one intended to forestall a challenge to its decision not to accept Freethinkers's offer to erect a "sister" monument. In light of this background, no reasonable observer would conclude that the Commission's adoption of the initiated ordinance also adopted and conferred upon the monument the religious views of the ordinance's proponents. Nothing in the record suggests that the Commission's actions in any other way had the effect of imbuing the Ten Commandments monument with a constitutionally prohibited effect. Accordingly, I see no reason to remand this matter to the district court for further consideration, relegating the court and parties to a new and needless round of litigation. I would affirm the dismissal.

_____